A05A1939. IN THE INTEREST OF L. F. et al., children.
(620 SE2d 476)

BLACKBURN, Presiding Judge.

The mother of L. F., J. F., and S. F. appeals the Laurens County Juvenile Court's order filed May 6, 2005, finding her three children deprived under OCGA § 15-11-2 (8) (A). She argues that the evidence presented at the April 20, 2005 deprivation hearing was insufficient to justify the court's ruling. Because the ruling is supported by clear and convincing evidence of deprivation, we affirm.

On appeal from a deprivation order, we review a trial court's finding of deprivation

> in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the [children were] deprived. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.

(Punctuation omitted.) *In the Interest of B. M. B.*[1]

OCGA § 15-11-2 (8) (A) defines a deprived child as one who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals."

Our Supreme Court has held that OCGA § 15-11-2 (8) (A)

---

[3] *Gray v. State*, 257 Ga. App. 393, 394-395 (1) (a) (571 SE2d 435) (2002).
[1] *In the Interest of B. M. B.*, 241 Ga. App. 609 (527 SE2d 250) (1999).

focuses upon the needs of the child *regardless of parental fault*. The petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue. If the child is found to be deprived, the juvenile court is authorized under [OCGA § 15-11-55] to impose alternative orders of disposition best suited to the protection and physical, mental and moral welfare of the child. Although the determination of where the child will be placed is necessary to such disposition, the proceeding itself is to determine whether the child is deprived and is not an action brought to decide custody matters.

(Citation and punctuation omitted; emphasis in original.) *In the Interest of J. P.*[2]

So viewed, the record shows that on February 25, 2005, Laurens County Department of Family and Children Services (DFACS) obtained an order from the Laurens County Juvenile Court for shelter care for the seventeen-year-old appellant's three minor children, ages eight months, twenty-three months and five years, who are the subjects of appellant's appeal. The specific basis for the shelter order as to these children was the inadequate housing being provided to the children, the appellant's lack of cooperation, and the children's exposure to drug use by appellant's mother and sister. Temporary physical placement of these children with DFACS was approved, pending the 72-hour hearing which was scheduled for February 28, 2005. All seven children at the Roberts Street apartment were, in fact, placed into protective custody to ensure their safety. Judge Tribble authorized the placement of six of the children, and Judge Rutrough provided authorization for the seventh child after Family Horizons reported that appellant's mother and sister, who is the seventh child's mother, had each tested positive for cocaine and marijuana on February 25, 2005.

At that time, appellant, who delivered her first child at age twelve, was herself placed into the custody of DFACS, as one of the above seven children. All of appellant's three children have different fathers, two of whom are incarcerated, and the whereabouts of the third is unknown. Appellant's mother (grandmother here) has had a Child Protective Services (CPS) case since March 2, 2002, resulting from substantial allegations of emotional abuse of her children, her alcohol abuse, and the constant fighting between her and her children with police involvement. Grandmother's case was opened for ongoing

---

[2] *In the Interest of J. P.*, 267 Ga. 492 (480 SE2d 8) (1997).

case management for the entire family, including appellant and her three children, in Laurens County and in Houston County where the family lived for five months before returning to Laurens County in July 2004.

While working with the family, CPS used state funds to pay for the family's bills; placed a family services worker in the home to provide transportation and other support as needed; and placed a Homestead provider in the home to work with the whole family by teaching parenting skills and helping family members with alcohol and drug problems. There is no record that appellant was involved in alcohol or drug use.

When the family returned to Laurens County, they moved into the Roberts Street home of appellant's sister, a three bedroom, one bath apartment. A total of nine family members lived at the Roberts Street address: Grandmother, her two teenage sons (ages fifteen and sixteen) and her two teenage daughters, appellant (age seventeen) and her sister (age nineteen), and appellant's three children (ages five and under), and her sister's daughter (age five), a total of seven children, including appellant.

No member of the family had a job, and there was no income to provide for any of the children. Appellant had never had a job, was not attending school and had failed to obtain her GED certificate. Appellant had been receiving monthly public assistance until January 2005 when the Temporary Assistance for Needy Families (TANF) was cut off for appellant's noncompliance. These funds had been the sole financial support for the entire family. The family did receive food stamps.

On February 28, 2005, DFACS filed the underlying deprivation complaints, and the Laurens County Juvenile Court issued its 72-hour hearing orders, finding that the children had inadequate housing and no source of income, that the 17-year-old mother was herself in the custody of DFACS, and that DFACS had provided this family assistance since 2000. The court found that the children's safety was at risk based on these findings and awarded temporary custody to DFACS. Appellant's three children have remained in the custody of DFACS, as agent for the Georgia Department of Human Resources, through the present time. The deprivation case was scheduled for a final hearing on March 30, 2005, but was then continued until April 20, 2005.

It is undisputed that, with the consent of DFACS, the 17-year-old appellant petitioned the court for emancipation, which was granted in early March 2005. After her emancipation, but before the April 20, 2005 deprivation hearing, appellant moved from the Roberts Street address into the home of a female family friend, Ms. Richardson, on Johnson Street. Appellant's children are still in the care of DFACS. While the record does not address this fact, apparently grandmother

and her other children and grandchildren remained at the Roberts Street address. Neither does the record reflect who else occupies the Johnson Street property, a five-bedroom residence, or makes rental and utility payments. It is undisputed, however, that the property is sparsely furnished, without sufficient bedroom furniture to accommodate appellant's children at this time.

The deprivation hearing was held on April 20, 2005, and based on the above evidence, the trial court made findings of fact, including the following: Appellant is a seventeen-year-old with three children five years of age or younger, who does not have the ability or experience to parent children of their ages; she does not have a stable residence, and her present residence, that of a family friend, is not sufficiently furnished to accommodate these children; she has no present source of income and has never held a job; her last source of income was TANF which was terminated due to her lack of cooperation with DFACS; she was provided with parent aide services to work with her parenting skills; she exposed her children to domestic violence and drug usage in her prior homes; she has never received child support from the fathers of her children; and DFACS has made reasonable efforts to preserve and reunify the family prior to the placement of the children in foster care, to prevent or eliminate the need for removal of the children from the home and to make it possible for the children to return home.

Based upon the findings of fact, the Court made conclusions of law, including the following: These children are deprived as defined in OCGA § 15-11-2 (8) (A) because they have inadequate housing and have been exposed to domestic violence; there is a lack of support for the children due to unstable or irregular employment; and the children have been exposed to drug usage by other family members. The Court concluded that the reasons that the children cannot be adequately and safely protected at home are that the appellant has insufficient parenting skills; she has no stable residence; and she has no source of income. The Court further concluded that to allow the children to reside in the home would be contrary to their welfare, and that removal is in the best interests of the children.

Temporary custody of the children was awarded to DFACS, as agent for the Georgia Department of Human Resources, pending receipt of the relative search report and a permanency hearing. The Court provided for a contingent permanency plan to reunite the children with appellant and directed DFACS to prepare a case plan for reunification pursuant to OCGA § 15-11-58.

Appellant's contention that the evidence was insufficient to support the trial court's ruling is without merit. It is the province of the juvenile court to weigh the evidence and determine its credibility.

See *In the Interest of T. L.*[3] The trial court exercises its discretion in issuing its ruling, and this Court defers to the factfinder unless the appellate standard has not been met. See *In the Interest of M. E.*[4] Here, we cannot say that the evidence is insufficient to support the trial court's ruling, given the appellant's total lack of financial ability to support her children, the inability to demonstrate a past or present ability to adequately care for and house her children, including the lack of furnishings in her present abode, and the past history of exposing her children to drug and alcohol abuse by family members. The trial court could consider appellant's past conduct in determining the likelihood that such conduct would continue in the future. See *In the Interest of O. J.*[5] What weight, if any, is to be given to recent improvements in appellant's housing circumstance is a question for the trial court here. See *In the Interest of L. S. D.*[6]

The trial court did not err in its ruling in this matter, and we affirm.

*Judgment affirmed. Miller and Bernes, JJ., concur.*

DECIDED AUGUST 25, 2005.

*Joseph C. Sumner, Jr.,* for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charles C. Butler,* for appellee.

---

[3] *In the Interest of T. L.,* 269 Ga. App. 842, 843 (605 SE2d 432) (2004).

[4] *In the Interest of M. E.,* 265 Ga. App. 412, 417 (593 SE2d 924) (2004).

[5] *In the Interest of O. J.,* 257 Ga. App. 1, 3 (570 SE2d 79) (2002).

[6] *In the Interest of L. S. D.,* 243 Ga. App. 626, 628 (534 SE2d 109) (2000).