630 S.E.2d 607 (2006)
279 Ga. App. 89
In the Interest of G.S., a Child.
No. A06A0283.
Court of Appeals of Georgia.
April 25, 2006.
*608 Meron Dagnew, Bentley C. Adams, III, for appellant.
Bruce A. Kling, Dalton, for appellee.
*609 BERNES, Judge.
The biological mother of G.S. appeals an order entered by the Juvenile Court of Whitfield County finding G.S. deprived and awarding temporary custody to the paternal grandparents. The mother contends that the evidence did not support a finding of deprivation.[1] We agree and reverse.
The record reflects that G.S. is a four-year-old male child. G.S.'s parents separated in 2003, although they never legally divorced. That same year, the juvenile court awarded immediate custody of G.S. to his paternal grandparents based on allegations that both of his parents were illegal drug users and were not providing adequate care and support for the child. Both parents thereafter consented to entry of an order finding G.S. deprived and awarding temporary custody to the grandparents for a period of two years. The order required that the mother obtain and maintain suitable housing and employment, pay weekly child support to the grandparents, maintain meaningful contact with the child, and complete a drug and alcohol assessment and any recommended treatment.
The temporary custody order expired in the summer of 2005,[2] and the mother resumed custody of G.S. However, the mother only maintained custody of G.S. for a little over a week before the paternal grandparents sought and obtained an order from the juvenile court granting them immediate custody of G.S. pending further legal proceedings. The grandparents subsequently filed a new deprivation petition.
The juvenile court conducted an adjudicatory hearing on the deprivation petition. At the hearing, the mother testified that she resides in a three-bedroom house with her boyfriend. According to the mother, she has been employed as a secretary at her boyfriend's construction firm for the past 11 months, where she makes between approximately $600 and $950 per month in wages, depending on how busy the firm is at a given time. Her monthly expenses total approximately $810 per month. Although she made more money at a previous job, the mother quit when the employer demanded that she work on Saturdays, which was the day that she had court-ordered visitation with her son during his two years in the custody of his grandparents. Finally, the mother testified that during the little time she had G.S. in her custody after the prior temporary custody order expired, she switched G.S.'s Medicaid to the county where she lived, enrolled him in pre-kindergarten, and scheduled appointments for a dental exam and yearly medical check-up.
Evidence was presented at the hearing that the mother had successfully completed a drug and alcohol assessment, and that her boyfriend and she had taken numerous random drug screens over the past two years, all of which had come back negative. Furthermore, caseworkers with the Department of Family and Children Services ("DFCS") had previously conducted a home evaluation of the mother's residence and had approved the home as suitable. Additionally, a criminal background check of the mother's boyfriend had been conducted, which reflected that he did not have a criminal record. There was evidence, however, that the mother had claimed G.S. as a dependent on her 2004 tax return although he did not reside with her at that time.
The paternal grandparents testified at the hearing as well. They noted that the mother had regularly visited G.S. over the past several months when he was under their care. But, the grandfather testified that although the juvenile court had ordered the mother to pay child support to them on a weekly basis in the previous deprivation order, the mother had missed multiple payments and still owed approximately $1,500 in past due child support.
No DFCS caseworkers testified concerning G.S. While G.S. did not himself testify, the guardian ad litem appointed to represent his interests stated at the hearing that there *610 was no evidence that the mother was unfit. Consequently, the guardian ad litem recommended that the mother retain custody over the child.
Based on this evidence, the juvenile court rejected the recommendation of the guardian ad litem, granted the deprivation petition, and placed G.S. in the temporary custody of his paternal grandparents. In its order, the juvenile court found that the mother currently had suitable housing "although she resides in the home of her boyfriend to whom she is not married while she remains married to the father of the child," had passed all previously administered drug tests, had successfully completed a drug and alcohol assessment, and had regularly visited G.S. at his grandparents over the past calendar year. However, the juvenile court found that the mother improperly claimed G.S. on her 2004 tax return. The juvenile court further found that the mother had failed to pay multiple weeks of previously ordered child support, and had failed to establish that her current employment with her boyfriend could cover her monthly expenses or provide for her child's needs.
"On appeal from a deprivation order, we must view the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived." (Citation omitted.) In the Interest of T.L., 269 Ga.App. 842, 843(2), 605 S.E.2d 432 (2004). The clear and convincing standard should not be discounted, for it "safeguards the high value society places on the integrity of the family unit." (Footnote omitted.) In the Interest of M.L.C., 249 Ga.App. 435, 436(2), 548 S.E.2d 137 (2001).
Even construing the evidence in the light most favorable to the juvenile court's judgment, we conclude that the evidence did not support a finding of present deprivation. Under OCGA § 15-11-2(8)(A), a child is deprived if he "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals."
To authorize even a loss of temporary custody by a child's parents, . . . the deprivation must be shown to have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child.
(Citation omitted.) In the Interest of K.S., 271 Ga.App. 891, 892-893, 611 S.E.2d 150 (2005); In re D.H., 178 Ga.App. 119, 124, 342 S.E.2d 367 (1986). Significantly, "[a]n order temporarily transferring custody of a child based on alleged deprivation must be grounded upon a finding that the child is at the present time a deprived child, and a finding of parental unfitness is essential to support an adjudication of present deprivation." (Citations and punctuation omitted; emphasis in original.) In the Interest of K.S., 271 Ga.App. at 893, 611 S.E.2d 150. See also In the Interest of M.L.C., 249 Ga. App. at 438-439(2), 548 S.E.2d 137.
Here, the juvenile court's grant of the deprivation petition was predicated on two primary findings.[3] First, the court found that the mother owed past-due child support to the paternal grandparents. Second, the court found that the mother had not secured current employment sufficient to cover her monthly expenses or to provide for G.S.'s needs.
It is true, as the trial court found, that the record reflects that the mother has not paid all of her previously ordered child support. However, while we certainly do not condone the situation, evidence concerning the *611 amount of support provided by the mother at a time when she was a noncustodial parent became "largely irrelevant" once the prior temporary custody order expired and she regained custody of G.S. See In the Interest of K.R.S., 253 Ga.App. 678, 680(1), 560 S.E.2d 292 (2002). Once the mother regained custody, a new deprivation proceeding had to be commenced, requiring proof of "current deprivation." (Emphasis in original.) Id.
As to the trial court's finding that the mother's current employment is insufficient to cover her monthly expenses, the record is ambiguous at best. The evidence established no more than that the mother's monthly wages were sometimes more, and sometimes less, than her monthly expenses. The party who has brought the petition alleging deprivation, not the parent from whose custody the child is being removed, carries the burden of proof. See In the Interest of D.C., 259 Ga.App. 157, 159, 576 S.E.2d 77 (2003). It follows that the scant, ambiguous record evidence concerning the mother's financial situation cuts against the grandparents alleging deprivation, not the mother. This is particularly true in light of our repeated holding that "[o]nly under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship." (Footnote omitted.) In the Interest of S.J., 270 Ga.App. 598, 599, 607 S.E.2d 225 (2004).
In any event, the fact that a parent may be in debt or have financial difficulties, without more, does not support a finding that a parent is unfit. See In the Interest of E.M., 264 Ga.App. 277, 280-281, 590 S.E.2d 241 (2003). A juvenile court is not authorized to remove a child from parental custody simply "because it has determined that the child might have better financial, educational, or even moral advantages elsewhere." (Citation omitted.) In the Interest of S.E.L., 251 Ga.App. 728, 729-730(2), 555 S.E.2d 115 (2001). Rather, "the primary factor in determining whether the child[][is] deprived is not the parents' circumstances, but the child['s] need." In the Interest of R.M., 276 Ga.App. 707, 715, 624 S.E.2d 182 (2005).
And, in the instant case, there was no testimonial or documentary evidence whatsoever showing that the mother's current financial situation is adversely affecting the needs of G.S. Indeed, G.S. had only been in the custody of his mother for a little over one week when he again was removed, and the minimal evidence presented at the hearing concerning that time period showed that the mother was in fact taking steps to care for G.S.'s needs, such as by ensuring that his Medicaid eligibility was in proper order, enrolling him in pre-kindergarten, and scheduling dental and medical appointments. Moreover, as already noted, the guardian ad litem supported allowing the mother to retain custody.
Under these circumstances, there was simply no evidence upon which a determination could be made that G.S. was deprived. There was no evidence that he was "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for [his] physical, mental, or emotional health or morals" as required under OCGA § 15-11-2(8)(A). See, e.g., In the Interest of D.S., 217 Ga.App. 29, 31(1), 456 S.E.2d 715 (1995) (reversing finding of deprivation when there was no evidence that child was experiencing "physical neglect, medical problems, malnourishment, emotional harm or mental inadequacies" as a result of current living situation).
For these reasons, the juvenile court erred in finding G.S. deprived and awarding temporary custody to the paternal grandparents. Although we are sympathetic to the fact that the paternal grandparents have nurtured and cared for G.S. for a significant portion of his life, it also bears repeating that
the juvenile courts should exercise great caution when entertaining deprivation proceedings brought by a non-parent to obtain custody from a parent, for there is a great likelihood in such a situation that the allegations of deprivation will be motivated less by concern for the child than by a desire to avoid the more stringent standard of proof applicable in a habeas corpus action in superior court.
(Citations and punctuation omitted.) In the Interest of K.R.S., 253 Ga.App. at 679(1), 560 S.E.2d 292. "The right to the custody and *612 control of one's child is a fiercely guarded right in our society and in our law. It is a right that should be infringed upon only under the most compelling circumstances." (Citation and punctuation omitted.) In the Interest of D.S., 217 Ga.App. at 32(1), 456 S.E.2d 715. Such circumstances were not proven here.
Judgment reversed.
ANDREWS, P.J., and BARNES, J., concur.
NOTES
[1] The biological father consented to a finding of deprivation and the awarding of temporary custody of G.S. to the grandparents.
[2] The juvenile court declined to enter an order of extension because an extension hearing had not been held within the time period mandated by statute. See OCGA § 15-11-58.1(a)(1).
[3] It is unclear to what extent the juvenile court relied on its finding that the mother filed a 2004 tax return claiming G.S. as a dependent. "The issue in a deprivation hearing . . . is not whether the parent has committed illegal acts, but whether there is intentional or unintentional misconduct resulting in the abuse or neglect of the child or what is tantamount to physical or mental incapability to care for the child." (Punctuation and footnote omitted.) In the Interest of C.D.E., 248 Ga.App. 756, 767(2), 546 S.E.2d 837 (2001). Thus, the fact that the mother may have filed an improper tax return for the prior calendar year would not support the granting of the deprivation petition.