661 S.E.2d 211 (2008)
In the Interest of T.P. et al., children.
No. A08A0581.
Court of Appeals of Georgia.
April 11, 2008.
*212 Rodney Q. Quarles, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Cynthia N. Johnson, Cohutta, for appellee.
PHIPPS, Judge.
This is a continuation of In the Interest of D.P.,[1] where we reversed a juvenile court order finding two children to be deprived, because the findings of deprivation were based primarily on evidence received at an untranscribed and apparently unreported detention hearing. After conducting another hearing on remand, the court entered a new order finding that the children continue to be deprived. The father appeals that order. Because the evidence of record supports that finding, we affirm.
D.P. was the father's appeal of a June 2006 order of the Juvenile Court of Murray County finding his then 12-year-old son D.P. and his then 13-year-old son T.P. deprived and granting custody of them to the Murray County Department of Family and Children Services (DFCS) for one year. As noted in D.P., the court entered the deprivation order following an adjudicatory hearing, and its findings were sufficient to sustain its determination that the children were deprived. But the findings were based primarily on evidence introduced at a detention hearing that was also held in June 2006. No transcript of the detention hearing had been included in the appellate record, even though the father had requested in his notice of appeal that nothing be omitted from the record. On inquiry to the juvenile court clerk's office, we ascertained that there was no transcript of the detention hearing. Under those circumstances, we concluded that the detention hearing had not been recorded. As a result, in March 2007 we reversed the deprivation order and remanded for further proceedings. DFCS did not move for reconsideration of our decision.
Following receipt of the remittitur in the juvenile court in April 2007, DFCS moved for an extension of the juvenile court's June 2006 order pursuant to OCGA § 15-11-58. A recorded and transcribed hearing was held on *213 DFCS's motion in June 2007. Based on evidence received at the hearing, the juvenile court entered an order in August 2007 continuing custody in DFCS for another year based on its finding that the children remained deprived.[2] In the August 2007 order, the court noted that the June 2006 detention hearing in fact had been recorded. And a transcript of the detention hearing has been prepared and included in the present record.
The evidence received at the June 2007 hearing, along with other evidence in the record, shows that in 2005 D.P. and T.P.'s brother (who was T.P.'s twin) was killed in a shooting incident that was ruled a suicide. In 2006, DFCS received reports that the father had been subjecting D.P. and T.P. to verbal and emotional abuse as a result of their brother's death and that he had also been physically abusing them. A visit by DFCS personnel to their home showed that the father had turned it into a virtual shrine to his deceased son. In the father's conversations with DFCS workers, he appeared so preoccupied with his son's death that he could not concentrate on other matters; at times, he acted paranoid; and, at other times, he was so detached from reality that he did not know what month it was. In addition, he and the children were taking numerous prescription medications, and he admitted that he did not always administer the medications to them as prescribed.
Depositions given by the children and their therapist in June 2007, and by a psychologist who had evaluated the father in July 2006, were admitted in evidence at the June 2007 hearing. The children testified that their father blamed them for their brother's death, that he beat them, that he had pointed a gun at their heads and threatened to kill them, and that they did not want to be reunited with him. The children's therapist testified that the boys were suffering from depression and posttraumatic stress disorder brought on by their brother's death in combination with their father's physical, verbal, and emotional abuse. The psychologist opined that, at the time of the July 2006 evaluation, the, father had mental problems that were so worsened by the death of his son that he was mentally ill and not competent to parent his children; and that his future competency would be determined by how he responded to treatment; but that, in view of the chronic nature of his problems, the likelihood that he would develop competency was poor. The DFCS case manager testified that although the father had completed most of his reunification case plan by maintaining stable housing, completing parenting classes, and having a psychological evaluation, he had not paid child support, was being treated by a psychologist who primarily prescribed medication, and had yet to receive the individual counseling found necessary in the psychological evaluation and recommended by DFCS.[3] The case manager also testified that in November 2006 the father had threatened to kill himself and then refused treatment.
1. The father challenges the sufficiency of the evidence to support the court's finding of deprivation in its June 2006 order. The question of whether the evidence was sufficient to support that finding of deprivation is moot, as the court conducted another hearing in June 2007 and found the children then deprived based on evidence received at that time.
2. The father contends that, at the June 2007 hearing, the juvenile court erred in considering the deposition of the psychologist who performed the psychological evaluation of him in July 2006.
The father argues that this psychological evaluation was irrelevant because it was performed about a year before the June 2007 hearing. We find no merit in this argument as the psychological evaluation contained both an assessment of the father's parental incompetency at the time of the evaluation *214 and a prediction of the likelihood of future improvement. Moreover, the court held the evidence open for any additional testimony from the psychologist that the father or DFCS might want to present (although no additional testimony was presented).
3. The father challenges the sufficiency of the evidence to support the juvenile court's finding of current deprivation.
"Under Georgia law, a child is deprived if the child `is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals.'"[4]
It has been held that to authorize a termination of parental rights, or even a loss of temporary custody by a child's parents, on the basis of deprivation, the deprivation must be shown to have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child.[5]
"Significantly, an order temporarily transferring custody of a child based on alleged deprivation must be grounded upon a finding that the child is at the present time a deprived child, and a finding of parental unfitness is essential to support an adjudication of present deprivation."[6] "The party who has brought the petition alleging deprivation, not the parent from whose custody the child is being removed, carries the burden of proof."[7] "[O]nly under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship."[8] "On appeal, we determine whether, after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost."[9]
The evidence, viewed in a light most favorable to DFCS, authorized the court to find in accordance with the applicable standard that the extreme anguish experienced by the father due to his son's death, combined with other emotional and mental factors affecting him, rendered him unable or unwilling to provide his surviving children with the proper parental care or control necessary for their mental or emotional health, and that this inability or unwillingness that existed as of June 2006 had not been remedied as of June 2007. The evidence thus supports the court's finding of present deprivation.
Judgment affirmed.
BARNES, C.J., and JOHNSON, P.J., concur.
NOTES
[1] 284 Ga.App. 453, 644 S.E.2d 299 (2007).
[2] Compare In the Interest of B.G., 231 Ga.App. 39, 497 S.E.2d 572 (1998) (reversing an order of the juvenile court continuing temporary child custody in DFCS, where an earlier order terminating parental rights had been reversed and, on remand, DFCS did not allege present deprivation).
[3] Compare In the Interest of J.P., 280 Ga.App. 100, 104-105(2), 633 S.E.2d 442 (2006) (father completed every aspect of case plan and DFCS caseworker testified there was no reason he could not immediately care for his child if he made daycare arrangements).
[4] In the Interest of M.L.C., 249 Ga.App. 435, 436(2), 548 S.E.2d 137 (2001), citing OCGA § 15-11-2(8)(A).
[5] In re D.H., 178 Ga.App. 119, 124, 342 S.E.2d 367 (1986) (citations omitted).
[6] In the Interest of G.S., 279 Ga.App. 89, 92, 630 S.E.2d 607 (2006) (citations and punctuation omitted; emphasis in original).
[7] Id. (citation omitted).
[8] Id. at 93, 630 S.E.2d 607 (citation and punctuation omitted).
[9] In the Interest of C.D.E., 248 Ga.App. 756, 761(1), 546 S.E.2d 837 (2001) (punctuation omitted).