679 S.E.2d 52 (2009)
In the Interest of J.A. et al., children.
No. A09A0944.
Court of Appeals of Georgia.
May 15, 2009.
*53 Timothy N. Shepherd, Griffin, for appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Senior Asst. Atty. Gen., Elizabeth M. Williamson, Asst. Atty. Gen., Justin B. Grubbs, Griffin, Charles B. O'Neill, Jr., Zebulon, Alonzo J. Bentley, Jr., for appellee.
BLACKBURN, Presiding Judge.
The father of J.A., H.A., and Y.A. appeals the Spalding County Juvenile Court's order that found his three children deprived under OCGA § 15-11-2(8)(A). Specifically, he argues that the evidence was insufficient to justify the court's ruling and that the court erred in failing to consider the court-appointed psychologist's report and in excluding certain testimony as hearsay. For the reasons set forth below, we affirm.
On appeal from a deprivation order, we review a juvenile court's finding of deprivation
in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the children were deprived. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.
(Punctuation omitted.) In the Interest of L.F.[1]
So viewed, the record shows that in September 2003, the Department of Family and Children Services ("DFCS") received a report, stating that the father and mother of J.A., H.A., and Y.A. were in the process of divorcing and that there were claims by the mother of molestation, physical abuse, and domestic violence in the home. The father countered that these claims were baseless and were a product of the mother's Graves' disease, which caused the mother to be mentally and emotionally unstable if she failed to her take medication. As a result, the children were removed from the home at that time and have not been returned to the physical custody of either parent. DFCS provided the parents with a reunification case plan, and over the course of the next year and a half, both parents were allowed limited visitation with the children, who were initially living with foster parents and later were living with maternal relatives. During that time, all three children consistently expressed their desire to not be returned to their parents' custody.
Based on the parents' lack of progress in complying with the earlier case plans, on June 27, 2005, DFCS filed complaints against both parents, alleging that the mother had engaged in domestic violence in the children's presence and that the father had been *54 emotionally abusive toward them.[2] On July 14, 2005, DFCS filed deprivation petitions as to all three children, which cited the extensive history of the case and which alleged that the children had been emotionally abused. On July 22, 2005, the juvenile court issued a 72-hour hearing order, stating that the children did not wish to live with either parent and finding probable cause to believe that the children were deprived. Before a full hearing could be held, the parties requested that they be allowed to attempt to resolve the issues associated with the petitions. Consequently, on December 27, 2005, nunc pro tunc to July 19, 2005, the juvenile court issued a consent order, finding that neither parent admitted to the allegations of deprivation but that the final adjudicatory hearing on deprivation would be tolled and held in abeyance until the family underwent a therapeutic counseling program.
On February 28, 2007, the juvenile court conducted the final adjudicatory hearing on DFCS's 2005 deprivation petitions. At the hearing, the court discussed the extensive history of the case and the testimony provided by the numerous witnesses, including the parents, the children, DFCS caseworkers, and mental health counselors. Specifically, the court noted that the court-appointed psychiatrist (Dr. Faber) testified that the father had anger management problems. The court also noted that none of the children wanted to live with the father and that they were doing well in their current environment. At the conclusion of the hearing, the court found the children to be deprived as to both parents based on the history of emotional abuse and domestic violence and found that the causes of the deprivation were unlikely to be remedied. Neither parent appealed this order. On April 17, 2007, the court held a disposition hearing, in which it approved a nonreunification plan. The court ordered that DFCS was to provide no more services for the parents but was to continue to support the children. The court also outlined a two-year case plan, which required the father to attend weekly anger management classes, weekly parental training classes, and weekly meetings with a therapist. In addition, the court ordered that the father meet with a psychologist at the end of the first year for an assessment of his progress and that he pay child support, maintain stable housing, and maintain stable employment. Toward the end of the hearing, counsel for the State noted that in light of the fact that the children will have been in the custody of DFCS for 15 of the most recent 22 months prior to the completion of the court's plan, DFCS would be required by statute to file a petition for termination of parental rights.[3] However, the juvenile court stated that it would not entertain such a petition and that its disposition order would serve as justification for DFCS not seeking termination as required by statute.
On June 6, 2008, DFCS filed additional petitions for deprivation, alleging that J.A., H.A., and Y.A. were still deprived due to their parents' neglect and inadequate supervision. The juvenile court held a hearing on these petitions on June 26, 2008. At the hearing, the children's DFCS case manager testified that the children had previously been deemed deprived based on emotional abuse, medical neglect, and domestic violence occurring in the home and that the bases for deprivation had not been cured by the parents. The case manager further testified that while the father had made progress on his case plan, he still had one more year of the plan to complete, pursuant to the court's earlier order. Additionally, the case manager opined that reunification with either parent at this point would be detrimental to the children.
During the hearing, the juvenile court also heard from the counselor overseeing the father's anger management and parenting *55 classes, who testified that he had made progress in those areas and that she did not believe that he needed to attend additional anger management classes. The father also offered the testimony of the new court-appointed psychologist, who had become involved in the case after Dr. Faber moved out of state. The psychologist testified that she disagreed with Dr. Faber's earlier evaluation of the father with regard to the extent of his anger issues and agreed with the counselor that the father did not need to continue parenting or anger management classes.
At the conclusion of the hearing, the juvenile court found that the children continued to be deprived based on the fact that the parents had not completed the case plan. On October 20, 2008, the court issued a written order, reiterating its findings and stating that there was a significant possibility that the children may be physically, emotionally, or mentally harmed if they were to be returned to either of their parents. This appeal by the father followed.
1. The father contends that the evidence was insufficient to support the trial court's finding that the children were deprived.[4] We disagree.
OCGA § 15-11-2(8)(A) defines a deprived child as one who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." Our Supreme Court has held that OCGA § 15-11-2(8)(A)
focuses upon the needs of the child regardless of parental fault. The petition is brought on behalf of the child and it is the child's welfare and not who is responsible for conditions which amount to deprivation that is the issue. If the child is found to be deprived, the juvenile court is authorized under [OCGA § 15-11-55(a)] to impose alternative orders of disposition best suited to the protection and physical, mental and moral welfare of the child. Although the determination of where the child will be placed is necessary to such disposition, the proceeding itself is to determine whether the child is deprived and is not an action brought to decide custody matters.
(Citation and punctuation omitted; emphasis in original.) In the Interest of J.P.[5] See In the Interest of L.F., supra, 275 Ga.App. at 247-248, 620 S.E.2d 476.
Here, in 2007, the juvenile court found that the children were deprived as to both parents based on the history of emotional abuse and domestic violence and that the causes of the deprivation were unlikely to be remedied. The court also found that the father had anger issues and ordered that he follow a case plan, which required him to attend weekly anger management and parental training classes for two years. The father did not appeal these findings and is therefore bound by them. See In the Interest of J.W.[6] Furthermore, the juvenile court properly took judicial notice of its prior findings in determining whether the children continued to be deprived and informed the parties during the hearing that it was doing so. See In the Interest of J.P.V.[7] In addition to its previous findings, at the conclusion of the 2008 deprivation hearing, the court found that although the father had made progress, he had not completed his case plan. Contrary to the father's argument, the court was entitled to consider the fact that the case plan had not been completed as evidence that the children's deprivation was likely to continue if they were returned to him. See In the Interest of R.B.;[8]In the Interest of B.B.[9] Accordingly, the evidence was sufficient to support the juvenile court's findings of deprivation.
*56 2. The father contends that the juvenile court abused its discretion in admitting into evidence the newly-appointed court psychologist's evaluation of the father but then failing to take it into consideration. We disagree.
Here, the father proffered the newly-appointed court psychologist to testify regarding her psychological evaluation of the father and regarding a report that she drafted, which summarized her findings. When the father's counsel requested that the report be admitted into evidence, counsel for the State objected on the ground that he had not had time to review the document because he had only received it on the day of the hearing. The juvenile court admitted the report into evidence but stated: "But I  you can put it in evidence. But I am going to rely on my notes with regard to her testimony, and I doubt if I'll take a look at it."
The father argues that the court abused its discretion in stating that it doubted that it would look at the psychologist's report. However, the court's comment simply reflected the amount of weight it was going to give to the report. As previously noted, "[i]t is the province of the juvenile court to weigh the evidence and determine its credibility." In the Interest of L.F., supra, 275 Ga.App. at 250, 620 S.E.2d 476. Moreover, the psychologist testified that her report was a summary of her testimony, which the court had heard and said it would consider. Accordingly, the juvenile court's comment regarding the extent to which it would consider the psychologist's report was not an abuse of discretion.
3. The father also contends that the trial court abused its discretion in excluding from evidence on hearsay grounds testimony regarding the counselor's and the newly-appointed court psychologist's conversations with the original court-appointed psychiatrist. This contention is without merit.
During the deprivation hearing, both the counselor and the newly-appointed court psychologist attempted to testify regarding their recent conversations with the psychiatrist, who was originally appointed by the court to psychologically evaluate the father and whose recommendations were adopted by the court in its case plan. Specifically, both attempted to testify that based on new information, the psychiatrist, who at the time of the hearing had moved out of the State, was now questioning whether his initial evaluation and the father's case plan needed modification. The trial court ruled that this testimony constituted hearsay and refused to allow it into evidence. However, the court allowed the counselor and the psychologist to testify as to whether their conversations with the psychiatrist affected their recommendations regarding the father's case plan. Additionally, at the conclusion of the hearing, the court allowed the father to proffer what the counselor's and the psychologist's testimony regarding their conversations would have entailed.
Given these circumstances, the juvenile court was well aware of the fact that the original psychiatrist was now questioning his initial evaluation of the father. We presume the juvenile court was able to sift the wheat from the chaff to afford due consideration to any legal evidence. In the Interest of A.R.[10] Furthermore, pretermitting whether the juvenile court erred in excluding as hearsay the counselor's and the psychologist's testimony regarding their conversations with the psychiatrist, the father has failed to show that such alleged error would have changed the outcome of the hearing and therefore has failed to show that it was harmful. See In the Interest of J.H.;[11]In the Interest of B.B., supra, 267 Ga.App. at 361(1), 599 S.E.2d 304; In the Interest of D.S.R.[12] Accordingly, the juvenile court's ruling does not require reversal.
Judgment affirmed.
ADAMS and DOYLE, JJ., concur.
NOTES
[1] In the Interest of L.F., 275 Ga.App. 247, 620 S.E.2d 476 (2005).
[2] The primary reason for the delay in DFCS's filing was because the case originated in the Superior Court of Spalding County as part of the divorce action between the parents. On September 5, 2003, the Superior Court issued an order finding that the children were deprived and transferring the matter to the juvenile court. On June 24, 2005, the Superior Court set aside its earlier deprivation order on the grounds that it was invalid. See OCGA § 15-11-28(a)(1)(C); Watkins v. Watkins, 266 Ga. 269, 271(1), 466 S.E.2d 860 (1996). As a result, DFCS filed the above-referenced complaints.
[3] See OCGA § 15-11-58(m).
[4] While this appeal was pending, J.A. reached the age of 18.
[5] In the Interest of J.P., 267 Ga. 492, 480 S.E.2d 8 (1997).
[6] In the Interest of J.W., 271 Ga.App. 518, 520, n. 1, 610 S.E.2d 144 (2005).
[7] In the Interest of J.P.V., 261 Ga.App. 194, 196(2), 582 S.E.2d 170 (2003).
[8] In the Interest of R.B., 285 Ga.App. 556, 561(3), 647 S.E.2d 300 (2007).
[9] In the Interest of B.B., 267 Ga.App. 360, 362(1), 599 S.E.2d 304 (2004).
[10] In the Interest of A.R., 295 Ga.App. 22, 28(6), 670 S.E.2d 858 (2008).
[11] In the Interest of J.H., 273 Ga.App. 424, 427, 615 S.E.2d 231 (2005).
[12] In the Interest of D.S.R., 246 Ga.App. 426, 428(4), 541 S.E.2d 61 (2000).