690 S.E.2d 457 (2010)
In the Interest of T.V. et al., children.
No. A10A0053.
Court of Appeals of Georgia.
January 26, 2010.
*458 Angela M. Kinley, Lawrenceville, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Assistant Attorney General, Jahn & Malas, Kristin W. Jahn, Roswell, for appellee.
BLACKBURN, Presiding Judge.
The mother of Tah. V., Tan. V., Te. V., and The. V. appeals from an order of the juvenile court finding the children to be deprived and continuing their temporary custody in the Gwinnett County Department of Family and Children Services ("the Department"), asserting that there was insufficient evidence to support that order. Finding that the evidence supported the juvenile court's finding that the children were currently deprived, we affirm the same. We further hold that the question of whether the juvenile court erred in continuing the Department's temporary custody of the children was rendered moot by the subsequent return of the children to their mother's custody.
"On appeal from a determination that a child is deprived, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived." (Punctuation omitted.) In the Interest of A.B.[1] In so doing, "[t]his Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the [juvenile] court's fact-finding and affirm unless the appellate standard is not met." (Punctuation omitted.) In the Interest of L.F.[2]
So viewed, the record shows that the Department took the children into protective custody on February 13, 2009, after Tah. V. was stabbed in the neck by his 18-year-old sister. Responding to the incident, the police found the sister, together with her infant son, the four children, and their infant sister (Tre. V.), all living together in a single motel room.[3] The mother also resided in the same motel room, but she was away for the evening and law enforcement's attempts to contact her that night were unsuccessful. According to police reports, the motel room was unsanitary, with rotting food, dirty dishes, and clothes piled everywhere, and the children were all "sick and coughing."
On February 17, 2009, the mother entered into a consent order placing temporary custody of the children and their infant sister with the Department and on February 25, 2009, the Department filed a deprivation petition. The petition alleged that the children were deprived because they lacked: (i) adequate housing (specifically, they were residing in a single motel room that was housing a total of eight people, and the conditions in the motel room were unsanitary and unsafe); (ii) adequate food; and (iii) adequate supervision, because the mother frequently left the children unattended in the motel room. The petition further alleged that the mother did not have sufficient income to provide adequate food and housing.
At the hearing on the deprivation petition, held on April 14, 2009, the evidence showed that the mother, her six children, and her infant grandchild had all resided together in a single motel room for over a year. The mother testified that the children's father had died in 2001 and that she had been unemployed from approximately November 2006 through December 2007, during which time she had given birth to her sixth child (Tre. V.). Even after she obtained a new job, however, whether the mother had work apparently depended upon whether a project was available for her. While the mother's current job allowed her to work from home, it required internet training and telephone access. The mother was away from the motel on the night in question because the motel's internet access was unavailable, and she had gone to spend the night with a relative so she could use their internet access *459 for her required, online job training at 7:00 the next morning. She had left her 18-year-old daughter to supervise her five siblings (ranging in age from 18 months to 16 years), as well as the daughter's own 18-month-old son.
According to the mother, she had not moved the family into an apartment even after obtaining employment, because she was attempting to keep the children in their same school district. She had been unable to find an apartment complex in that district, however, that was willing to allow a family of her size. The mother had recently found and rented a four-bedroom apartment outside of that school district and had moved into the same. The apartment had working utilities and adequate furniture for the children. Additionally, the Department was helping the mother to apply for public assistance she was eligible for, as well as for social security benefits available to the children as a result of their father's death.
Based on the foregoing, the Department recommended that custody of the children and their infant sister be returned to the mother, under a protective order that forbade unsupervised contact with the older sister[4] and that required the mother to maintain stable housing, follow any recommendations made following her mental health assessment, and pursue social security benefits for which her children were eligible. The children's guardian ad litem, however, disagreed with that recommendation and argued that it was in the children's best interests to wait an additional amount of time before returning them to their mother's custody. Such additional time was necessary: (i) to allow the Department to receive the results of the mental health evaluation that the mother had just completed and to formulate and implement recommendations based on those results; and (ii) to ensure that the mother was able to maintain employment and housing stability.
The juvenile court agreed with the guardian ad litem, noting the mother's history of unstable employment and housing. The court also considered the fact that the mother had not completed a budget, that there was some question as to whether her income was sufficient to provide for the children's needs, and that the mother was just that day applying for public assistance. The court did, however, agree to return custody of the youngest child to the mother to allow her to transition back to parenting while also working full time. It thereafter entered an order finding that the remaining four children were deprived, based upon the mother's inability to provide them with adequate housing, food, and supervision, and continuing temporary custody of those children with the Department for another seven weeks.[5] The mother now appeals from that order.
1. Under Georgia law, a child is deprived if the child "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." OCGA § 15-11-2(8)(A). "[A]n order temporarily transferring custody of a child based on alleged deprivation must be grounded upon a finding that the child is at the present time a deprived child." (Emphasis supplied.) In the Interest of T.P.[6] See also In the Interest of C.L.C.[7] ("[t]he petition must allege present deprivation, not past deprivation or potential future deprivation"). Where children have been "removed from parental custody,... the [D]epartment may prove current deprivation ... by showing that, if the *460 child[ren] were returned to the parents at the time of the hearing, [they] would be deprived." In the Interest of P.D.W.[8]
The mother argues that, in light of her recent employment and her recent move to a four-bedroom apartment, the evidence did not support the juvenile court's finding that the children were currently deprived i.e., the evidence did not show that, if returned to her custody, the children would have inadequate housing, food or supervision. We disagree.
"Lack of stable housing and lack of support due to a parent's unstable or irregular employment are appropriate factors in determining deprivation." In the Interest of J.S.[9] Moreover, "[i]t is the province of the juvenile court to weigh the evidence and determine its credibility." In the Interest of L.F., supra, 275 Ga.App. at 250, 620 S.E.2d 476. In determining whether the parent's current situation is stable, the juvenile court may consider the parent's past conduct and decide, "[w]hat weight, if any, is to be given to recent improvements in [the parent's] housing [and employment] circumstance...." Id. at 251, 620 S.E.2d 476.
The evidence before the juvenile court showed that the mother had provided the children with inadequate housing for over a year; that she had been unemployed for over a year; that even after she obtained a new job, such employment was not "regular"; that she had not completed a budget and therefore did not actually know whether her income was adequate to provide for the children's needs; and that she had just applied for the public assistance and social security benefits that could supplement her income. Additionally, the juvenile court was also entitled to consider the opinion of the guardian ad litem, that the children were deprived. See In the Interest of J.S., supra, 295 Ga. App. at 863, 673 S.E.2d 331; In the Interest of M.E.[10] We cannot say that this evidence was insufficient to support the juvenile court's finding of current deprivation. The mere fact that the mother had maintained adequate housing for less than six weeks did not make that housing "stable." Nor did the evidence show that the mother had a history of sustained employment or that her current income was adequate to provide for the children.
2. In light of the fact that the children have now been returned to their mother's custody, her claim that the trial court erred in continuing temporary custody of the children with the Department is moot.
Judgment affirmed.
BARNES and BERNES, JJ., concur.
NOTES
[1] In the Interest of A.B., 289 Ga.App. 655(1), 658 S.E.2d 205 (2008).
[2] In the Interest of L.F., 275 Ga.App. 247, 620 S.E.2d 476 (2005).
[3] The children's infant sister and their infant nephew were also taken into protective custody.
[4] At the time of the hearing, the sister remained in jail on charges relating to the stabbing of Tah. V.
[5] At the hearing held seven weeks later, on June 2, 2009, the juvenile court again continued temporary custody with the Department because, based upon her mental health evaluation, the mother had been ordered to undergo a psychological assessment. The juvenile court, therefore, wanted to obtain the results of the psychological assessment before returning the children to their mother. Following another hearing on June 23, 2009, the juvenile court entered an order returning custody of the children to the mother, under the protective order requested by the Department.
[6] In the Interest of T.P., 291 Ga.App. 83, 85(3), 661 S.E.2d 211 (2008).
[7] In the Interest of C.L.C., 299 Ga.App. 729, 734(1), 683 S.E.2d 690 (2009).
[8] In the Interest of P.D.W., 296 Ga.App. 189, 192(1)(a), 674 S.E.2d 338 (2009).
[9] In the Interest of J.S., 295 Ga.App. 861, 864, 673 S.E.2d 331 (2009).
[10] In the Interest of M.E., 265 Ga.App. 412, 415, 593 S.E.2d 924 (2004).