531 S.E.2d 404 (2000)
242 Ga. App. 852
In the Interest of M.C.J. et al., children.
No. A98A2296.
Court of Appeals of Georgia.
March 17, 2000.
*405 Charles E. Day, Monroe, Ann N. Garner, for appellant.
McNally, Edwards, Bailey & Lander, Kenneth J. Lander, Decatur, for appellee.
JOHNSON, Chief Judge.
In September 1997, the mother of then two-year-old M.C.J. and five-month-old R.A.J. petitioned the juvenile court to terminate the parental rights of the children's father, who is serving a fifty-year sentence for four counts of aggravated assault. The juvenile court granted the petition and terminated his parental rights. The father appealed, asserting in one of his enumerations that the juvenile court lacked jurisdiction over the *406 case. The guardian ad litem, who had recommended that the father's rights not be terminated, filed a brief asserting the same arguments as the father.
We agreed with the father and reversed the decision of the juvenile court, holding that the juvenile court lacked jurisdiction to decide the case because it was brought by one parent and was presumptively a custody dispute, jurisdiction over which lies in the superior court. In the Interest of M.C.J., 236 Ga.App. 225(1), 511 S.E.2d 533 (1999); see In the Interest of W.W.W., 213 Ga.App. 732, 445 S.E.2d 832 (1994) (a deprivation case filed between parents is prima facie a custody case and must be brought initially in superior court). The Supreme Court of Georgia granted certiorari to consider the correctness of this court's holdings in In the Interest of M.C.J. and In the Interest of W.W.W.
In In re M.C.J., 271 Ga. 546, 549, 523 S.E.2d 6 (1999), the Supreme Court of Georgia reversed our decision and overruled In the Interest of W.W.W., supra; In the Interest of M.A., 218 Ga.App. 433, 434, 461 S.E.2d 600 (1995) (holding that all deprivation actions between parents are prima facie custody matters which must be brought in superior court); and all other cases relying on In the Interest of W.W.W. and In the Interest of M.A. for the propositions stated above. The Supreme Court held that all juvenile actions brought by one parent against another are not prima facie custody cases and all such actions need not be filed in superior court. In re M.C.J., supra. The Supreme Court explained that the only "custody cases" juvenile courts should not entertain are deprivation proceedings brought by a noncustodial parent to obtain custody from a custodial parent. Id. at 548, 511 S.E.2d 533.
In reversing our decision as to jurisdiction, the Supreme Court remanded the case so that we may consider the remaining substantive issues in the case. The remaining issues are: whether the children are deprived when they are well cared for by the mother and her family; whether termination is in the best interests of the children; and whether the trial court erred in basing its decision on the opinion of a psychologist who did not examine the children.
The parents of M.C.J. and R.A.J. met in 1994 but never married. M.C.J. was born in June 1995, and R.A.J. was born in February 1997. Both children have lived with the mother and her parents in the grandparents' home since birth. The father saw M.C.J. several times per week during the first two months of the child's life but did not help care for the child much during the visits. The father would become "extremely aggravated" when M.C.J. needed changing or was hungry and would pass the child to the mother if the infant was not calm within a few minutes. He cared for the child by himself on one occasion. From February 1996 until the father's incarceration in July 1996, the father saw M.C.J. about five times. The father has never had any contact with the couple's second child, R.A.J., who was born during his incarceration.
The father never attempted to legitimate the children. He has paid about $1,300 in child support since the children were born. He has paid no child support while in prison, despite having a jail account with funds available. While in prison, he admitted to the mother that he had regularly used cocaine.
In the winter of 1995, while the mother was pregnant with M.C.J., the father backed her against a wall and pounded the wall around her face with his fists as she cried and as his mother tried to stop him. In May 1995, the father became angry with the mother while she was driving and punched her car windshield, shattering the glass. She was eight months pregnant at the time.
In late 1995, the father hit the mother in the face. As she tried to hide her face from him, he yanked her hair repeatedly. In June 1996, while the mother was pregnant with their second child, the father slapped her. One-year-old M.C.J. was in the bathroom with them during the incident.
Between the time the mother became pregnant with M.C.J. in 1994 and the time of M.C.J.'s birth in 1995, the father was convicted of seven crimes, including two counts of driving under the influence of alcohol, possession of alcohol by a minor, hunting out of season, hunting from a motor vehicle, hunting *407 from a public road, and hunting deer at night.
The children's maternal grandfather assisted the father in various ways, such as helping him get his driver's license reinstated, but the father lost the license again after getting another DUI conviction. The grandfather also helped him get a job and co-signed on a car loan so he would have transportation to and from work. However, the father defaulted on the note, and when the grandfather paid the arrearage, the father repaid him with a bad check. The father also made unauthorized charges on the grandfather's charge account.
In early 1996, the father was charged with DUI, possession of alcohol by a minor, driving on the wrong side of the road, driving with an open container of alcohol, and speeding. A few months later, the father was charged with murder and five counts of aggravated assault. The circumstances surrounding this incident are not clear from the record before us, although the incident involved a fatal shooting after a party. The father was acquitted of murder and one of the aggravated assault charges but was convicted of four counts of aggravated assault. He was sentenced to 50 years, with the first 40 to be served in confinement and the remainder to be served on probation. After the father was sentenced on the aggravated assault convictions, the state decided not to prosecute the traffic charges brought earlier in the year.
While in prison, the father has been disciplined for fighting and possessing razor blades, a knife, a lighter, and cigarettes. He testified that he completed his GED requirements while in prison and is on a waiting list to undergo treatment for alcohol abuse. He will be eligible for parole in 2010.
1. The father contends the juvenile court erred in finding the children deprived within the meaning of OCGA § 15-11-2(8) when the evidence shows they are well cared for by their mother and other relatives. This argument is without merit.
The statute provides that the court determines parental misconduct or inability based upon, among other things, the lack of proper parental care or control by the parent in question. OCGA § 15-11-81(b)(4)(A)(ii). That someone else is providing good care in the absence of the parent in question does not preclude a finding of deprivation. See generally Jones v. Dept. of Human Resources, 155 Ga.App. 371(2), 271 S.E.2d 27 (1980) (court's finding that child is deprived authorized even though caseworker's intense supervision of mother and child prevented harm to child). In fact, the court may evaluate the issue of deprivation by considering the conditions in which the children would be raised if placed with the parent in question. In the Interest of J.L.M., 204 Ga.App. 46, 48(1), 418 S.E.2d 415 (1992) (deprivation finding authorized where father incarcerated, despite temporary guardians' provision of good care).
The question is whether the child is presently without the proper parental care and control of the offending parent. See In the Interest of L.F., 203 Ga.App. 522, 417 S.E.2d 344 (1992). And while imprisonment alone cannot lead to termination, the trial court can consider an incarcerated parent's criminal history in determining whether a child is presently without the proper parental care and control of the offending parent. In the Interest of F.C., 239 Ga.App. 545, 546, 521 S.E.2d 470 (1999). Based on his previous history and present incarceration, there is no dispute that, at the present time, the father is unable to furnish proper parental care for and control of the children. The trial court did not err in finding the children deprived.
2. The father contends that the trial court was not acting in the children's best interests by terminating his parental rights inasmuch as the termination leaves them illegitimate with no potential source of income from him or his family. We disagree.
In determining whether termination is in the best interest of a child, the trial court is to consider the physical, mental, emotional, and moral needs of the child. In the Interest of C.D.A., 238 Ga.App. 400, 404(3), 519 S.E.2d 31 (1999). Financial support from the father would certainly benefit the children. However, the children here have not received significant financial support from the father or his *408 family. Nor have they received mental, emotional, or moral support from their father. The older child, who was two years old at the time of the hearing, has had very little contact with his father since infancy. During one of the visits the father assaulted the mother in the child's presence, and during other visits he became frustrated with the child's behavior and handed him over to the mother. The younger child, who was about one year old at the time of the hearing, has had no contact with her father at all.
When presented at the hearing with a hypothetical question which included the father's history, a clinical psychologist testified that based on the father's age (22) and long history of alcohol and drug abuse, aggression and violence, some of which has been directed at the mother, and his lack of responsibility, the deprivation was likely to continue. The expert testified that, based on the hypothetical given, he would expect that upon release from the structured prison environment the person would be at times violent, including toward the children; irresponsible; to have continued minimal contact with the children; and to abuse alcohol and drugs. In his opinion, the likelihood of the person described being rehabilitated is "dismal."
As for whether continued deprivation is likely to harm the children, the expert testified that he believed the children would be harmed by a continued relationship with the father whether he remains in prison or not. The children are not bonding with the father while he is in prison. As a result of the lack of bonding necessary for a healthy relationship, the father will be a stranger to them and negatively affect their senses of stability, well-being, and right or wrong. Having a parent in prison is confusing to children, and children sometimes blame themselves for their parent's situation. The expert added that children are harmed by having a parent that is a poor role model.
The expert testified that, in his opinion, the children will suffer even more harm upon the father's release from prison. Given his volatile temper, tendency toward violence, impulsiveness, and alcohol and drug abuse, visitation would have a negative impact on the children's well-being.
The same factors supporting a finding of parental inability or misconduct may also show that termination is in the child's best interest. In the Interest of F.C., supra at 545, 521 S.E.2d 470. Also, the court may consider uncertainties as to when the father would be able to care for the children. In the Interest of J.O.L., 235 Ga.App. 856, 858, 510 S.E.2d 613 (1998). Although the father now voices concern about the children having no legal father as a result of the termination, he never took any steps toward legitimating them. The trial court has broad discretion regarding the best interest of the child. In the Interest of M.L.P., 236 Ga.App. 504, 510(1)(d), 512 S.E.2d 652 (1999). The trial court did not abuse its discretion in this case.
3. The father contends the juvenile court erred by basing its decision, in part, upon the opinion of an expert witness. He complains that the clinical psychologist who testified on the mother's behalf lacked personal knowledge of the parties, that his opinion was based on the opinion of the mother's attorney rather than on facts in evidence, and that his opinion went to the ultimate issue in the case. This enumeration presents no grounds for reversal.
It was not necessary for the witness to know the parties personally. An expert witness may testify about opinions based on his personal knowledge or upon facts admitted into evidence at trial and presented in the form of hypothetical questions. Peters v. State, 268 Ga. 414, 415(1), 490 S.E.2d 94 (1997). Therefore, that he did not know the parties is not critical if the facts were admitted into evidence and presented as hypothetical questions.
At the hearing, the father accepted the witness as an expert. The mother's attorney announced that he would ask the expert hypothetical questions based on evidence admitted or which would be admitted at the hearing. See Vaughn v. State, 249 Ga. 803, 804-805, 294 S.E.2d 504 (1982). The father's attorney did not object. The mother's attorney then proceeded to ask the questions, including therein the following factual predicates: a 22-year-old father is serving a 40-year *409 prison sentence for aggravated assault; he has DUI convictions, several hunting violations, an open container law violation, and the numerous other offenses discussed above; he was disciplined in prison for fighting and possessing contraband; he had difficulty keeping jobs before going to prison; he made unauthorized charges on another person's credit card; he defaulted on a car loan and wrote a bad check; he shattered a car window with his fist while the pregnant mother of his child was driving; he punched a wall around the mother's face; he slapped the mother and pulled her hair; he failed to take care of the children by himself except on one occasion; he abused alcohol and drugs; and he paid $1,300 in child support during the children's lives, but took back some of it to pay fines, bail, and debts. The hypothetical questions also included other similar facts which are too numerous to list here.
The father does not specify which of the facts, which go on for several pages of the hearing transcript, are not supported by the evidence. This is not the kind of argument required to preserve an enumeration for appellate review, since it invites the court to review the entire record to determine which of the many predicate facts included in the lengthy hypothetical questions are not supported by the evidence. See Green v. State, 208 Ga.App. 1, 2(2), 429 S.E.2d 694 (1993). Indeed, our review of the record in connection with our consideration of Divisions 1 and 2 reveals that the questions were consistent with the evidence introduced at the hearing. Moreover, the fact that an expert's opinion may be based in part on facts not in evidence goes to its weight, not its admissibility. Parrish v. State, 237 Ga.App. 274, 278(2)(v), 514 S.E.2d 458 (1999). This argument presents no grounds for reversal.
Nor is reversal required based on the father's argument that the expert improperly testified as to the ultimate issue in the case. As this issue is raised for the first time on appeal and no objection was made on this ground in the trial court, we need not consider it here. See Inta-Roto, Inc. v. Guest, 160 Ga.App. 75, 76-77(1), 286 S.E.2d 61 (1981); see generally Minor v. State, 264 Ga. 195, 196(1), 442 S.E.2d 754 (1994).
Judgment affirmed.
SMITH and BARNES, JJ., concur.