A04A1076. IN THE INTEREST OF K. E. P., a child.
(605 SE2d 114)

MILLER, Judge.

C. M. P., the father of K. E. P., filed a petition to terminate the parental rights of the child's mother, G. M. C., in the Mitchell County Juvenile Court. The juvenile court granted the petition, and the mother appeals, arguing that (1) the juvenile court lacked subject matter jurisdiction to rule on the petition (because the petition was actually a disguised custody matter) and (2) the father did not show by clear and convincing evidence that termination of the mother's parental rights was warranted. We discern no error and affirm.

The record reveals that G. M. C. gave birth to K. E. P. on September 22, 1999, and relinquished primary physical custody of K. E. P. to the father on December 15, 2000. The mother formally granted primary physical custody to the father through a July 17, 2001 consent order filed in Mitchell County Superior Court. Although the July 17 consent order gave G. M. C. visitation rights, she failed to visit K. E. P. on a consistent basis, and it is undisputed that she did not visit K. E. P. at all between November 2001 and August 26, 2003 (the date of the termination hearing), despite having had opportunities to do so.

The father filed a petition to terminate G. M. C.'s parental rights on June 18, 2003, citing, among other things, G. M. C.'s inability to provide proper care and control for K. E. P. and her failure to communicate with the child or to form any sort of parental bond with her for over a year and a half. The father contended that such actions indicated that G. M. C. had shown parental misconduct and inability such that it was in K. E. P.'s best interest for the mother's parental rights to be terminated. Following an August 26, 2003 hearing, the juvenile court granted the father's petition to terminate the mother's parental rights. The mother appeals.

1. The mother contends that the juvenile court lacked subject matter jurisdiction to rule on the termination petition filed by the father because the petition was actually a disguised custody matter that could only be properly heard in superior court. We disagree.

It is true that not every deprivation petition or petition for the termination of parental rights brought by one parent against another can be heard in a juvenile court.

> Under the long-established rule that pleadings are to be construed according to their substance and function and not merely as to their nomenclature, being always mindful to construe such documents in a manner compatible with the best interest of justice, each deprivation petition must be judged on its own merits. If it appears from an analysis of the pleading that it is actually a disguised custody matter, then it is outside the subject matter jurisdiction of the juvenile courts.

(Citation and punctuation omitted.) *In re M. C. J.*, 271 Ga. 546, 548 (523 SE2d 6) (1999). Specifically, the Supreme Court of Georgia has held that "juvenile courts should not entertain deprivation proceedings brought by a *non-custodial parent to obtain custody* from a custodial parent." (Citation and punctuation omitted; emphasis in original.) Id.

Here the petition was filed, not by the noncustodial parent, but by the parent who already retained primary physical custody of the child at issue. Moreover, the termination petition itself deals specifically with factors relating to the mother's inability to provide proper care and support for K. E. P. such that her parental rights should be terminated. The juvenile court properly exercised jurisdiction over the termination proceedings. See *In the Interest of M. C. J.*, 242 Ga. App. 852, 853 (531 SE2d 404) (2000).

2. The mother argues that the father failed to provide clear and convincing evidence that her parental rights should be terminated.[1] We disagree.

Our responsibility as an appellate court is well established:

Construing the evidence most favorably to the findings of the court, the question on appeal is whether a rational trier of fact could have found clear and convincing evidence (a) of parental misconduct or inability and (b) that terminating parental rights was in the best interest of the child. Parental misconduct or inability is shown by evidence (i) the child is deprived, (ii) lack of parental care caused the deprivation, (iii) such is likely to continue, and (iv) the continued deprivation is likely to cause serious harm to the child.

(Citations omitted.) *In the Interest of K. D. S.*, 237 Ga. App. 865 (1) (517 SE2d 102) (1999); see OCGA § 15-11-94 (a), (b) (4) (A).

(a) *Parental Misconduct or Inability.* Construing the evidence in the light most favorable to the juvenile court's findings, we will address the aforementioned factors.

(i) *Deprivation Caused By Lack of Parental Care.* As defined in OCGA § 15-11-2 (8) (A), a deprived child is one who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." Even though the mother did not keep K. E. P. under her primary care for nearly three years, and even though K. E. P. was given a stable home by the father, such factors do not preclude a finding of deprivation. See *In the Interest of M. C. J.*, supra, 242 Ga. App. at 855 (1). Indeed, "the court may evaluate the issue of deprivation by considering the conditions in which the child[ ] would be raised if placed with the parent in question." (Citation omitted.) Id.

---

[1] To the extent that the mother argues that the juvenile court did not find by clear and convincing evidence that the mother had abandoned her child (see OCGA § 15-11-94 (c)), such argument need not be addressed here, since the juvenile court did not base its ruling on the issue of abandonment.

The evidence reveals that the mother had two other children besides K. E. P. who, in the same month that K. E. P. was born, were found to be deprived based on evidence that the mother maintained filthy living conditions, was unemployed, and could not provide proper care for the children. From that time, the mother neither maintained a consistent residence nor found consistent employment for years to come. The mother herself admitted at the termination hearing that she was unable to take care of K. E. P. from day to day and that it was better for K. E. P. to live with her father. The mother also failed to pay any child support for K. E. P. despite the fact that she had been required to do so since July 2001. She further did not send the child any cards or holiday gifts in the two years preceding the termination hearing.

Several witnesses testified at the termination hearing that the mother failed to create any sort of parental bond with K. E. P., and that K. E. P. bonded with the father's wife and referred to her, not G. M. C., as her mother. Further evidence revealed that K. E. P. did not even know G. M. C. as her real mother in light of the extended period of time in which the mother did not visit her.

At the time of the hearing, the mother resided with a man who had previously pled guilty to simple battery for beating his ex-wife's four-year-old daughter with his hands and a belt. The man had made his ex-wife's seven-year-old son stand in a corner for days at a time, and had set fire to his ex-wife's and her children's clothes when his ex-wife tried to leave him. The man also had a history of physically abusing his ex-wife and even threatened to kill her in front of her children. The ex-wife testified at the termination hearing that she would be very concerned for any child placed in the presence of her violent ex-husband.

Based on the foregoing evidence, a rational trier of fact could have found clear and convincing evidence that the mother's lack of proper parental care or control caused the child to be deprived. See OCGA § 15-11-94 (b) (4) (C) (i)-(ii); see also *In the Interest of C. R.*, 245 Ga. App. 697, 700 (2) (538 SE2d 776) (2000); *In the Interest of J. M. B.*, 231 Ga. App. 875, 878 (1) (a), (b) (501 SE2d 259) (1998).

(ii) *Lack of Care or Control Likely to Continue.* Evidence of past conduct may be considered in determining whether the deprivation is likely to continue if the child is returned to her parent. *In the Interest of A. A.*, 252 Ga. App. 167, 172 (2) (c) (555 SE2d 827) (2001). Here, the mother's instability and her failure to form any significant relationship with K. E. P. began early in K. E. P.'s life and continued through the date of the hearing, and no evidence was presented to show that the mother's situation was improving in any way. Indeed, the mother herself admitted that she was in no position to raise K. E. P.

Moreover, at the time of the hearing the mother was living with a man who had a history of violent behavior and abusing children. Contrary to any evidence being presented at the hearing that the mother's living conditions were improving, evidence was presented from which the juvenile court could have concluded that her living conditions were in fact getting worse. The mother's history of continued instability, the present potential to place K. E. P. in harms way in the mother's new residence, and the mother's failure to take an active role in K. E. P.'s life all authorized the juvenile court's finding that the lack of proper parental care or control was likely to continue. See, e.g., *In the Interest of C. R.*, supra, 245 Ga. App. at 700 (2); see also *In the Interest of K. C. H.*, 257 Ga. App. 529, 531-532 (2) (571 SE2d 515) (2002) (finding of deprivation proper where mother continued to live with man who was a known danger to children).

(iii) *Serious Harm to the Child.* The juvenile court was authorized to find from the same evidence detailed above that the deprivation was likely to cause serious physical, mental, emotional, or moral harm to the child. See, e.g., *In the Interest of A. M. L.*, 242 Ga. App. 121, 124 (1) (d) (527 SE2d 614) (2000). Indeed, the lack of attention that the mother gave to K. E. P. eliminated any bond between K. E. P. and the mother, and K. E. P. was in a better and more stable environment with her father. See, e.g., *In the Interest of J. M. B.*, supra, 231 Ga. App. at 878-879 (1) (d). Moreover, the mother's living conditions were, by her own admission, bad for her child, and her living situation had only worsened in the years that she remained absent from K. E. P.'s life.

Thus, we conclude that the juvenile court could have found clear and convincing evidence of parental misconduct or inability.

(b) *Best Interest of the Child.* When clear and convincing evidence exists of parental misconduct or inability, the juvenile court then considers whether termination of parental rights is in the best interest of the child, in light of the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home. OCGA § 15-11-94 (a). "The same evidence showing parental misconduct or inability may, and here does, establish this requirement." (Citation and punctuation omitted.) *In the Interest of J. B. A.*, 230 Ga. App. 181, 185 (2) (495 SE2d 636) (1998).

Since a rational trier of fact could have found (1) clear and convincing evidence of parental misconduct or inability and (2) that termination of parental rights was in the best interest of K. E. P., the juvenile court did not err in terminating the mother's parental rights to K. E. P.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 23, 2004 —

Joseph Vaknin, for appellant.

Powell & Waters, Alfred J. Powell, Jr., Richard L. Waters, Jr., Robert C. Richardson, Jr., for appellee.