## A09A1600. IN THE INTEREST OF V. D., a child.
(692 SE2d 780)

BARNES, Judge.

The father of one-year-old V. D. appeals from the juvenile court's order finding the child deprived and awarding temporary custody of V. D. to the Department of Family and Children Services ("DFACS"). The father contends that the trial court erred in awarding custody of the child to DFACS because the father was not found to be unfit, the case plan was not tailored to the allegations of deprivation, and he was denied his right to due process because he was not properly served with notice of the deprivation hearing. For the reasons set forth below, we affirm.

> On appeal from a juvenile court's order finding deprivation, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived. In doing so, we neither weigh the evidence nor determine the credibility of witnesses; instead, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.

(Citations, punctuation and footnotes omitted.) *In the Interest of H. S.*, 285 Ga. App. 839 (648 SE2d 143) (2007).

So viewed, the evidence shows that on November 7, 2008, the McIntosh County DFACS filed a deprivation complaint and took two-day-old V. D. into custody when her mother displayed severe mental instability while at the hospital shortly after giving birth. The mother was screaming and talking with people who were not present, but refused psychiatric assistance. The complaint also alleged that the baby was deprived because of the "mother's lack of bonding with [V. D.], her bizarre behavior, and active case in South Carolina, and substantiated history [of child deprivation] in Georgia." The appellant was listed as the father in the complaint, but his address was unknown. The mother told one nurse that she and the father were broken up and another nurse that he was not present because he was working.

Subsequently, DFACS filed a deprivation petition in which it alleged, in addition to the allegations in the complaint, that the mother was diagnosed with bi-polar disorder but was not taking medications, she has an active case in South Carolina involving the near drowning of her one-year-old twins, and she has history with Georgia of inadequate supervision, clothing, food, and shelter for her other children. It was also noted that V. D. was the only one of the mother's five children still in her custody. The complaint further

156

noted that the mother's divorce was finalized in April 2008 and that her husband was not V. D.'s biological father, but that the mother identified the appellant, whom she said lived in Gainesville, Florida, as the father.

On November 25, 2008 the juvenile court conducted a hearing on the petition, and the appellant, the putative father, was not present and had not legitimized V. D. Regarding the appellant, the mother testified that he was not present when the child was born and had not seen V. D., and that she had "lost count" of how long it had been since she last saw him. She testified that the appellant was going to move to Georgia and live with her and V. D., but he always had "another excuse" for why he had not done so. The caseworker testified that she had spoken with the appellant before the hearing and that he told her that he did not want the mother to know where he lived, but provided DFACS with the address. On December 16, 2008, nunc pro tunc to November 25, 2008, the juvenile court entered an order finding V. D. to be deprived.

On January 13, 2009, the juvenile court conducted a final disposition hearing at which the father was present and not represented by counsel. The mother's trial counsel, a public defender, stated that the father had applied for representation the day of the hearing, and that he could only represent the mother. It was also noted that the parents were married. The juvenile court told the father that he would be appointed counsel.

The father testified that he and the mother had resolved their issues and were in a relationship. The father also testified that they planned to live together, and wanted the baby to live with them. The father admitted that he was unemployed but explained that he had just moved from Florida and was looking for work. He testified that he was not present when V. D. was born because he and the mother had miscommunicated, and that he had not signed the DFACS case plan because certain wording in the document seemed to denote an "admission of guilt."

The trial court subsequently entered a disposition order incorporating the case plan which required both parents to maintain and provide proof of adequate housing and employment, visit V. D. weekly, complete parenting classes, submit to psychological evaluations, remain drug and alcohol free, and follow the recommendations of service providers. The juvenile court also appointed counsel for the father, who then on January 28, 2009 filed a petition to legitimate V. D. The father also filed an objection to the case plan and following a hearing, on April 7, 2009, nunc pro tunc to January 13, 2009, the trial court entered a final disposition order incorporating the provisional order which found V. D. to be deprived. The father appeals from that order.

1. The father first contends that the juvenile court erred in awarding temporary custody to DFACS when there were no findings of parental unfitness against him.

Under Georgia law, a deprived child is one who is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." OCGA § 15-11-2 (8) (A). This definition focuses on the needs of the child regardless of parental fault. *In the Interest of N. D.*, 286 Ga. App. 236, 239 (1) (648 SE2d 771) (2007). "[I]t is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue." (Citation and punctuation omitted.) *In the Interest of M. D.*, 283 Ga. App. 805, 806 (642 SE2d 863) (2007). "[A]n order temporarily transferring custody of a child based on alleged deprivation must be grounded upon a finding that the child is at the present time a deprived child, and a finding of parental unfitness is essential to support an adjudication of present deprivation." (Citation and punctuation omitted.) *In the Interest of K. J.*, 268 Ga. App. 843, 844 (1) (a) (602 SE2d 861) (2004). Parental unfitness caused either by intentional or unintentional misconduct resulting in abuse or neglect of children, or by what is tantamount to physical or mental incapability to care for the children must be established. *In the Interest of U. B.*, 246 Ga. App. 328 (1) (540 SE2d 278) (2000).

"It is the province of the juvenile court to weigh the evidence and determine its credibility." *In the Interest of L. F.*, 275 Ga. App. 247, 250 (620 SE2d 476) (2005). In determining whether the parent's current situation is stable, the juvenile court may consider the parent's past conduct and decide, "[w]hat weight, if any, is to be given to recent improvements in [the parent's] housing [and employment] circumstance. . . ." Id. at 251.

Here, although the father argues that there was no evidence of his unfitness, the evidence before the juvenile court showed that the father was absent from the child's life when she was born and, in fact, although later notified of the birth, insisted that the mother not be told where he lived. Despite being aware of the November 2008 hearing concerning the disposition of the child, the father remained absent and did nothing to legitimate the child until over two months later. Although he and the mother were married at the time of the hearing, the father had no job, no prospect for employment, and had been unemployed in Florida as well. "Lack of stable housing and lack of support due to a parent's unstable or irregular employment are appropriate factors in determining deprivation." *In the Interest of J. S.*, 295 Ga. App. 861, 864 (673 SE2d 331) (2009).

We cannot say that this evidence was insufficient to support the juvenile court's finding of current deprivation.

Regarding the father's contention that custody with DFACS was not warranted, it is true that "a finding that a child is deprived does not necessarily result in a loss of custody by the parent." *In the Interest of E. M.*, 264 Ga. App. 277 (590 SE2d 241) (2003). Moreover, there must be proof of parental unfitness that is clear and convincing. See OCGA § 15-11-58 (a). However, as noted above it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue. *In the Interest of S. Y.*, 284 Ga. App. 218, 219 (644 SE2d 145) (2007). Further, there is no requirement that parental unfitness be intentional, as a parent may lose temporary custody of a deprived child based upon a finding of either intentional or unintentional unfitness where it resulted in abuse or neglect of the child. Id.

Here, V. D. was taken into temporary custody because of her mother's mental instability and the lack of adequate housing and support. The father was not present in the child's life and although notified of the circumstances, chose not to intervene until later in the process. At the time of the hearing, although newly married, neither parent was employed, housing was still an issue, DFACS had no current address for the couple, and the mother's mental impairments were not addressed. We need not wait until V. D. suffers harm before finding her to be deprived. See, e.g., *In the Interest of A. R.*, 287 Ga. App. 334, 336 (651 SE2d 467) (2007) ("A juvenile court is under no obligation to return [a child] to the [father] until [she] suffer[s] further harm in order to obtain current evidence of deprivation or neglect.").

Thus, as there was clear and convincing evidence sufficient to authorize a rational trier of fact to find deprivation, the juvenile court here did not err in finding the child deprived and awarding temporary custody to DFACS.

2. The father also argues that his due process rights were violated because he was not present at the deprivation hearing. He does not maintain that he was unaware of the hearing, only that he was financially unable to get to it and DFACS did not assist him. "The fundamental idea of due process is notice and an opportunity to be heard." (Citations and punctuation omitted.) *In the Interest of A. J.*, 269 Ga. App. 580, 581 (1) (604 SE2d 635) (2004). The father does not contend that he was deprived of either. Although he contends that he should have been given financial assistance pursuant to OCGA § 15-11-39.1 (d), pursuant to which a court "may authorize the payment from county funds of the costs of service and of necessary travel expenses incurred by persons summoned or otherwise required to appear at the hearing," there is no evidence that the father ever requested assistance in traveling to the hearing. In fact, the caseworker testified that the father did not want the

mother to know where he was living.

Accordingly, this contention is meritless.

*Judgment affirmed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED MARCH 26, 2010.

*Earle J. Duncan III*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, James A. Chamberlain, Jr.*, for appellee.

