727 S.E.2d 279 (2012)
315 Ga. App. 673
In the Interest of M.M. et al., children.
No. A12A0260.
Court of Appeals of Georgia.
April 19, 2012.
*280 Cynthia Adams, Robert A. Kunz, Dallas, for the Interest of M.M.
MIKELL, Presiding Judge.
The Douglas County Juvenile Court found that M.M. and M.M., five-year-old twins, were deprived, and entered a two-year disposition of custody order in favor of their father. The mother appeals from the disposition and from an order of adjudication, arguing that the juvenile court erred in finding that jurisdiction was proper, as the deprivation was merely a disguised custody dispute over which the superior court has jurisdiction, and further alleges that the trial court erred in finding clear and convincing evidence of present deprivation. For the reasons that follow, we affirm.
The twins' parents never married, and the parents' relationship ended during the pregnancy. Both twins were born with medical complications, and while one came home shortly after birth, the other spent seven months in the hospital and was diagnosed with short bowels, failure to thrive, and respiratory problems requiring the use of oxygen. She also needed a feeding tube with a port, and upon release from the hospital, and required occupational, physical, and speech therapy. The parents lived together and shared responsibility for the twins' care for the first year-and-a-half after birth. The mother moved out, and about a month later, in 2007, Clayton County Department of Family and Children Services (DFACS) removed the children from her care because she failed a drug test. DFACS entered into a safety plan and placed the children with the mother's sister. The mother moved back in with the father so that the children would not be placed in foster care, then soon moved out again. At one point, the mother filed for abandonment in Clayton County; however, the charges were dismissed upon a showing that the father had paid support and that the children were living with him.
The mother left the children with the father in July 2010, following one twin's surgery for a wound that did not heal after removal of a feeding tube. Between the time the mother left the twins and the father's filing of the deprivation petition in November 2010, the mother did not visit the children or pay support. When the deprivation petition was filed, a prior pro se custody and legitimation action filed by the father in 2009 still was pending. The mother did not oppose legitimation. The juvenile court found that paternity testing confirmed the father's belief that the twins were his children.
After several hearings, the juvenile court found the children deprived in a May 9, 2011, adjudication order, and granted temporary custody to the father in a June 6, 2011, disposition. The findings of fact underlying the juvenile court's orders are discussed in Division 2, below.
1. The mother argues that the juvenile court lacked subject matter jurisdiction because the deprivation action was filed by a non-custodial parent seeking custody from a custodial parent, and therefore was a disguised custody action properly within the domain of the superior court.
Jurisdiction is a question of law to which appellate courts apply a de novo standard *281 of review.[1] Although the juvenile court has exclusive jurisdiction over children alleged to be deprived,[2] "if a deprivation proceeding is actually a disguised custody matter, then it is outside the subject matter jurisdiction of the juvenile courts."[3] However, our Supreme Court has "explicitly rejected the idea that we must regard any deprivation or termination action between parents as a prima facie custody dispute."[4] Rather, juvenile courts may not hear "deprivation proceedings brought by a non-custodial parent to obtain custody from a custodial parent."[5] Therefore, we follow the longstanding rule that pleadings must be construed according to their substance and function rather than their nomenclature, and if an analysis shows that a deprivation petition is what it purports to be, rather than a disguised custody proceeding, the juvenile court has jurisdiction.[6] "[E]ach deprivation petition must be judged on its own merits."[7]
In the instant case, although the father previously had filed a custody action, the juvenile court did not err in finding that the nature of the case was a deprivation action, and that it had jurisdiction. First, the petition makes valid allegations of deprivation as defined by OCGA § 15-11-2(8)(A),[8] as discussed in Division 2, below. Second, although the father did not have legal custody of the twins, he has had physical custody since their mother voluntarily left them at his home in July 2010, and it is undisputed that the mother did not pay support and did not visit the children in the ensuing five months prior to the father's filing of the deprivation petition.[9]
The case sub judice is distinguishable from other cases involving deprivation petitions filed while a custody action was pending where we have found the juvenile court lacked jurisdiction. In In re J.E.T.,[10] the children were in the father's custody when the mother filed a deprivation action. The appellate court in J.E.T. affirmed the juvenile court's finding that the mother was using the deprivation as a way to gain custody because her initial deprivation petition expressly requested that the children be placed in her sole legal and physical custody and her amended petition asked the court to consider her as a possible custodian, and sought to terminate the father's parental rights.[11] In the instant deprivation action, by contrast, the petition does not seek either permanent custody or a termination of parental rights, and the trial court's disposition contemplates the mother's post-incarceration involvement with the children.[12]
Although the father's pending pro se petition for legitimation and custody predates *282 the deprivation action, that petition indicates that the children were living with the father because the mother was in jail, and the father's accompanying statement says that the mother has "on numerous occasions ... [been] unable to provide for, or take care of, my children." The father also testified that he sought custody because the mother would drop the children off at his house and then "disappear" without leaving him their Medicaid cards. Because he had no legal right to the children, he could not take them to see medical specialists. In a similar situation, we found that the juvenile court had jurisdiction where there was a lack of evidence showing that petitioner would have sought custody but for the children's present deprivation.[13] Finally, "the court's order reflects on its face that it was addressing the alleged deprivation of [M.M. and M.M.], and juvenile courts clearly have subject matter jurisdiction over deprivation petitions."[14] We find no error.
2. The mother alleges that the trial court erred in finding clear and convincing evidence of present deprivation, arguing that the evidence and findings of fact related only to past deprivation. We disagree.
On appeal from a juvenile court's finding of deprivation,
we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.[15]
A deprived child is one who is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals."[16] "Deprivation is established by proof of parental unfitness arising from either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child."[17]
While the petition must allege present deprivation,[18] we have held that "[i]n determining whether the parent's current situation is stable, the juvenile court may consider the parent's past conduct and decide what weight, if any, is to be given to recent improvements in the parent's housing and employment circumstance."[19]
The father's petition does allege present deprivation, including the mother's leaving the children with the father beginning in July 2010 and not visiting them; her lack of appropriate housing and stable employment; and her lack of financial support for the twins and her use of one twin's disability benefits for to pay her own bills rather than to care for the child.
While the juvenile court's May 9, 2011, adjudication order finding deprivation considers the mother's history, it is also replete with findings related to her present circumstances. The juvenile court found that the mother had placed the children with the father beginning in July 2010, had not provided the father with the girls' food stamps or Medicaid cards, and that lacking the Medicaid cards and legal custody, the father could not take the girls to medical specialists. The court also found that the mother used for herself $2,400 in disability benefits intended for one twin. The court further found that the mother had disobeyed its order that she *283 reimburse the $2,400 in disability benefits. The court found that the mother has had seven to eight residences since the twins were born, has not had stable employment, and was unemployed much of the time between 2009 and 2011, and that friends and relatives were paying her bills. The court also found that the mother had difficulty conforming to rules such as timely appearing in court and attending visitations with the children, and that the guardian ad litem had expressed concerns about the mother's arrests, failure to appear in court, anger issues, and unstable living situations and employment. Additionally, the guardian ad litem testified that but for the father, the twins likely would have been in foster care. The court further found that the mother "has not had the ability to provide for [the twins'] physical, social and emotional needs on her own."
Further, the juvenile court's most recent order in the instant case is the June 6, 2011, disposition. In that order, the juvenile court found that the mother has objected to a mental health assessment, and the court indicated that it "[had] reason to be concerned about a potential diagnosis of personality disorder." The court found that the mother was incarcerated at the time of that hearing, with no projected release date, no court date, and no bond. The court also found that although the mother anticipated returning to a prior job, the guardian ad litem had reason to believe the mother had lost that job before she was incarcerated. Nothing in the court's order indicates any recent improvements in the mother's housing or employment as contemplated in In re V.D.[20]
"Lack of stable housing and lack of support due to a parent's unstable or irregular employment are appropriate factors in determining deprivation."[21] Further, the evidence before the juvenile court showed that when in the mother's physical custody, the girls frequently had been cared for and provided for by others. "That someone else is providing good care in the absence of the parent in question does not preclude a finding of deprivation."[22] While the court's adjudication order found that the mother provided for the children's basic medical and educational needs while they were in her custody, the court also found that leaving the children in her custody put them at risk given her unstable residence and employment situation combined with the children's physical, emotional, social, educational, and medical needs. As to their medical needs, we have held that the special medical needs of children and the parent's inability to provide for those needs are relevant considerations in a deprivation action.[23]
As the record amply shows evidence of valid allegations and findings of present deprivation under OCGA § 15-11-2(8)(A), we cannot say that this evidence was insufficient to support the juvenile court's finding that there was clear and convincing evidence of present deprivation. We affirm.
Judgment affirmed.
MILLER and BLACKWELL, JJ., concur.
NOTES
[1] (Punctuation and footnotes omitted.) In re K.L.H., 281 Ga.App. 394, 395, 636 S.E.2d 117 (2006).
[2] OCGA § 15-11-28(a)(1)(C).
[3] (Punctuation and footnote omitted.) In re K.L.H., supra.
[4] (Footnote omitted.) Id. at 396, 636 S.E.2d 117.
[5] (Footnote omitted; emphasis in original.) Id.
[6] In re M.C.J., 271 Ga. 546, 548, 523 S.E.2d 6 (1999).
[7] Id.
[8] Compare In the Interest of K.R.S., 253 Ga.App. 678, 679(1), 560 S.E.2d 292 (2002) (petition that fails to make valid allegations of deprivation under OCGA § 15-11-2(8) should be treated as a custody dispute outside juvenile court's jurisdiction).
[9] See In the Interest of K.E.P., 269 Ga.App. 700, 701-702(1), 605 S.E.2d 114 (2004) (in termination action, juvenile court found to have subject matter jurisdiction where petitioner already had primary physical custody of child and other parent had not visited for more than a year).
[10] 269 Ga.App. 567, 604 S.E.2d 623 (2005). Accord In re C.L.C., 299 Ga.App. 729, 733(1), 683 S.E.2d 690 (2009) (juvenile court lacked jurisdiction to decide deprivation where non-parents sought to have custody transferred from mother to themselves, and mother's ex-boyfriend testified he would want custody even if mother was rehabilitated, and where petition did not contain valid allegations of deprivation).
[11] In re J.E.T., supra at 569-570(1), 604 S.E.2d 623.
[12] See In the Interest of T.L., 269 Ga.App. 842, 843(1), 605 S.E.2d 432 (2004) (deprivation petition brought by DFACS asking that father get temporary custody but contemplating reunification with mother not a disguised custody proceeding).
[13] In the Interest of K.L.H., supra.
[14] (Footnote omitted.) In the Interest of M.L.C., 249 Ga.App. 435, 436(1), 548 S.E.2d 137 (2001).
[15] (Citation omitted.) In re W.W., 308 Ga.App. 407, 707 S.E.2d 611 (2011).
[16] OCGA § 15-11-2(8)(A). We note that the mother's appellate brief frequently relies on authority related to termination actions, rather than deprivation actions, and that while there is some cross-applicability, certain standards cited by the mother are inapplicable here.
[17] (Citation and punctuation omitted.) In re W.W., supra at 410, 707 S.E.2d 611.
[18] In the Interest of T.P., 291 Ga.App. 83, 85(3), 661 S.E.2d 211 (2008).
[19] (Citation and punctuation omitted.) In re V.D., 303 Ga.App. 155, 157(1), 692 S.E.2d 780 (2010).
[20] Id.
[21] (Footnote omitted.) In the Interest of J.S., 295 Ga.App. 861, 864, 673 S.E.2d 331 (2009).
[22] (Citation omitted.) In re M.C.J., 242 Ga.App. 852, 855(1), 531 S.E.2d 404 (2000). See also In the Interest of J.L.M., 204 Ga.App. 46, 48(1), 418 S.E.2d 415 (1992) (deprivation finding authorized where father incarcerated and upon showing of his failure to meet children's needs, despite temporary guardians' provision of good care).
[23] See In the Interest of A.B., 289 Ga.App. 655, 656, 658 S.E.2d 205 (2008) (deprivation finding upheld where mother disappeared for months, leaving disabled child in maternal grandmother's care); In the Interest of D.Q., 307 Ga.App. 121, 125, 704 S.E.2d 444 (2010) (deprivation finding upheld where mother did not ensure that children's mental health needs were met).