**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 10, 2015**

# In the Court of Appeals of Georgia

A15A0126. IN THE INTEREST OF M. R., a child.

MILLER, Judge.

The father of M. R. appeals from a juvenile court order finding the child to be deprived.[1] The father contends that the trial court erred in concluding that M. R. was a deprived child and that the father was the reason for that deprivation. For the reasons that follow, we affirm.

---

[1] In 2013, the General Assembly adopted a new Juvenile Code to replace Chapter 11 of Title 15 of the Georgia Code, and the new Juvenile Code applies to juvenile proceedings commenced on and after January 1, 2014. Ga. L. 2013, Act 127, §§ 1-1, 5-1. Although the petition against the father at issue in this appeal was filed in January 2014, the deprivation proceedings involving the child were *commenced* in December 2013. Therefore, although the juvenile court found the child to be "dependent" as to the mother and the father under the new Juvenile Code, see OCGA § 15-11-2 (22), we use the term "deprived" because the proceedings commenced in 2013. See *In the Interest of G.R.B.*, 330 Ga. App. 693 n.1 (769 SE2d 119) (2015).

In an appeal from a deprivation order, "we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived." (Citation omitted.) *In the Interest of D.Q.*, 307 Ga. App. 121 (704 SE2d 444) (2010).

So viewed, the evidence shows that the mother and father were married in October 2008, and M. R. was born in South Carolina in December 2011. The mother and father divorced in February 2013. The terms of the divorce decree provided that the mother and father shared joint legal custody, and the mother had primary physical custody of M. R.

Around the time of the divorce, the father stopped working full-time. The father was involved in an accident in May 2013, and has been unemployed since that time. The father applied for, but was denied, Social Security disability benefits. The father was appealing that decision, and testified that he was not actively seeking employment. The father confirmed that he had no income, received food stamps, and lived rent-free with his mother, who supported him financially.

In October 2013, the mother and her children moved to Georgia, while the father remained in South Carolina. The father testified that, in the eight months

between his divorce and the time M. R. moved to Georgia, he had visited M. R. only three times. The father claimed that the mother had prevented him from visiting M. R. and he went to an attorney to enforce his visitation rights, however, he did not pursue the matter because of the injuries he sustained in the accident.

In early December 2013, the Department of Family and Children Services ("DFCS") filed deprivation complaints alleging that the mother was homeless, the appointed caregiver could no longer care for M. R. and her siblings, and the children lacked adequate supervision. Based on these complaints, the juvenile court entered an order placing M. R., then two-years old, and her siblings into DFCS's care. Thereafter, on December 23, 2013, DFCS filed a deprivation petition against the mother, alleging that the mother had gotten into a physical altercation in front of the children, and that there was ongoing violence at home. DFCS also alleged that the mother had untreated mental health issues, she tested positive for marijuana, and she lacked stable housing and income. Following a hearing in January 2014, the trial court found M. R. deprived as to the mother.

On January 8, 2014, DFCS filed a deprivation petition against the father, alleging that the father had effectively abandoned M. R. At a February 2014 hearing, the DFCS caseworker assigned to the family testified that the father had failed to

3

complete a drug screen that was required as part of the home evaluation necessary to determine whether his out-of-state residence was an appropriate placement for M. R. The father testified that he was aware that he needed to submit to drug screening before being approved for placement, however, he conceded that he had refused four separate court orders to submit to drug screening and refused to allow DFCS to conduct a home evaluation. The father also admitted that he had been involved in a physical altercation with the mother on one occasion.

Following the hearing, the juvenile court found M. R. to be deprived as to the father because he had failed to submit to drug tests; he had not demonstrated an ability to provide care for M. R. with stable housing, income, and child care; and he had failed to maintain a bond with M. R. through consistent visitation. This appeal ensued.

The father contends that the trial court erred in concluding that M. R. was deprived. We disagree.

A deprived child is one who is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals[.]" Former OCGA § 15-11-2 (8) (A). The primary consideration in deciding whether a child is deprived is the

child's welfare, without regard to the fault of the parent. See *In the Interest of R.M.,* 276 Ga. App. 707, 716 (624 SE2d 182) (2005). "Deprivation may be shown to have resulted from parental unfitness that is either intentional or unintentional misconduct resulting in the abuse or neglect of a child by what is tantamount to physical or mental incapability to care for the child." (Citation omitted.) *In the Interest of A.R.*, 287 Ga. App. 334, 335-336 (651 SE2d 467) (2007).

In this case, M. R. was taken into DFCS custody because, among other things, the mother was homeless and was unable to provide adequate supervision and care. The father had essentially been absent from the child's life, as he admitted he only visited M. R. approximately three times in 2013. Although the father claimed that the mother prevented him from visiting M. R., and that he contacted his attorney to enforce his rights, he admitted that he abandoned those efforts because of his own need to recover from injuries he sustained in an accident. Therefore, the evidence showing the "father's lack of involvement in his child's welfare, leaving the child vulnerable to neglect . . . inflicted by the mother, supports a finding that the father's failure to exercise proper care and control caused his child's deprivation." (Citation omitted.) *In re T.B.*, 267 Ga. App. 484, 487 (1) ( 600 SE2d 432) (2004).

5

Moreover, at the time of the February 2014 deprivation hearing, the father had been unemployed for almost a year, he had no source of income, he relied on his mother for financial support and housing, and he was not actively seeking employment. The trial court was authorized to consider the father's lack of prospects in obtaining stable income in determining whether M. R. was deprived. See *In the Interest of V.D.*, 303 Ga. App. 155, 157 (1) (692 SE2d 780) (2010). ("In determining whether the parent's current situation is stable, the juvenile court may consider the parent's past conduct and decide, what weight, if any, is to be given to recent improvements in the parent's . . . employment circumstance.") (citation and punctuation omitted). Further, the father refused to submit to the required home evaluation, which included a drug test. In light of these circumstances, the juvenile court was under no obligation to return M. R. to his custody until the child suffered further harm in order to obtain current evidence of deprivation or neglect. See *In the Interest of A.R.*, 287 Ga. App. 334, 336 (651 SE2d 467) (2007); see also *In the Interest of V.D.*, supra, 303 Ga. App. at 157-158 (1) (evidence that child was sufficient to sustain finding of deprivation as to father where DFCS obtained custody due to mother's lack of adequate housing and support, father was absent from child's life, and father lacked stable housing and income to support the child). Accordingly,

6

there was clear and convincing evidence sufficient to authorize the juvenile court to find that M. R. was deprived.

*Judgment affirmed. Branch, J., concurs. Andrews, P. J., concurs in judgment only.*