**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS***
***COURT. ALL FILINGS MUST BE SUBMITTED WITHIN***
***THE TIMES SET BY OUR COURT RULES.***

**April 27, 2021**

# In the Court of Appeals of Georgia

A21A0313. IN THE INTEREST OF G. G., a child.                    DO-012

DOYLE, Presiding Judge.

The mother of G. G., a child born in November 2018, appeals from an order finding G. G. to be a dependent child as defined by OCGA § 15-11-2 (22). The mother contends that the juvenile court erred because the record lacks clear and convincing evidence of dependency at the time of the disposition hearing. For the reasons that follow, we disagree and affirm.

This case is the mother's second appeal of an order addressing the well-being of G. G. In the first appeal, the mother challenged a January 2019 order finding G. G. to be dependent.[1] This Court remanded the case in September 2019 after finding the

---

[1] See *In the Interest of G. G.*, 351 Ga. App. 895 (833 SE2d 583) (2019). Where appropriate, we have referred to the record in that case to access the initial pleadings as a matter of background.

juvenile court's order unreviewable due to a lack of adequate factual findings.[2] On remand, the original trial judge had retired, so the juvenile court held a new evidentiary hearing in December 2019 and entered an order on April 8, 2020, finding G. G. to be a dependent child. Twenty-one days later, on April 29, 2020, the mother filed a notice of appeal challenging that order and resulting in this appeal.[3]

The record shows that the Georgia Department of Family and Children Services ("DFCS") first became involved in the case when it received a call from the hospital where G. G. had just been born. The hospital reported that the parents presented at the hospital with very poor hygiene and a bad odor. A DFCS representative visited the parents in the hospital to interview them, and she observed the parents' poor hygiene and an odor permeating the hospital room: "There was a

---

[2] See id. at 896.

[3] On the same day, April 29, 2020, the juvenile court entered an order terminating the mother's parental rights a few hours before she filed her notice of appeal. The mother's notice of appeal did not reference the termination order, nor does she challenge it in this appeal. Nevertheless, because the termination order is premised in part on a finding of dependency, we address the merits of the mother's present challenge to the April 8, 2020 dependency order. See generally *In the Interest of B. R. J.*, 344 Ga. App. 465, 474 (1) (a) (810 SE2d 630) (2018) ("[T]he mother did not previously challenge the court's earlier ruling that the children were dependent . . . , and the court was authorized to find from the evidence presented that the children remained, to some extent, dependent" at the time of termination.)

2

concern that no one was taking baths." The DFCS worker learned that the mother had not sought prenatal care, and the parents did not have any food, diapers, wipes, or other supplies to care for the baby. The parents did not have a car seat or other transportation, instead relying on a friend. The father did not appear to interact with the baby at the hospital, and the mother did not bathe, diaper, or feed the baby at the hospital, instead relying on the friend to provide that care. The parents were "virtually homeless," temporarily living in a friend's apartment without arrangements for the future.

The DFCS worker also asked the parents about the presence of any other children, and the parents disclosed that they had three other children, but their parental rights were terminated in proceedings in Virginia in the preceding year. The parents stated that their circumstance in Virginia was similar — they lacked stable housing, income, and an ability to care for the children — which was exacerbated by their history of drug abuse.

Based on this information, DFCS sought and obtained temporary custody of G. G. and filed a petition in the juvenile court alleging dependency. Following an evidentiary hearing, which did not include the records from the parents' history in Virginia, the juvenile court entered an order adjudicating G. G. to be a dependent

child. The mother appealed that order, resulting in the remand of the case for entry of adequate written factual findings in the order.[4]

On remand, the juvenile court held another evidentiary hearing in December 2019, receiving evidence regarding the parents' history with the Virginia Department of Social Services starting in 2017, the circumstances causing the intake of G. G. in 2018, and the circumstances after G. G. was taken into DFCS custody leading up to the time of the 2019 hearing. The parents did not present evidence at that hearing.[5] Based on the evidence from the hearing, the juvenile court entered an order finding G. G. to be a dependent child.

The mother now appeals from that order, challenging the sufficiency of the evidence and findings supporting the juvenile court's dependency determination.

---

[4] See *In the Interest of G. G.*, 351 Ga. App. at 896.

[5] The mother's appellate brief references apparent testimony from the parents in a prior proceeding disputing certain aspects of the case with respect to owning a car seat and having sufficient income, but she provides no record cites for that testimony. Furthermore, even if such testimony were at issue, it alone does not demand reversal because we defer to the juvenile court, which acts as the factfinder, to assess the credibility of such testimony and give it appropriate weight. See *In the Interest of T. B. R.*, 304 Ga. App. 773, 773 (697 SE2d 878) (2010) (explaining that appellate courts "do not weigh the evidence or determine the credibility of witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met") (punctuation omitted).

On appeal from an order finding a child to be a dependent child, we review the juvenile court's finding of dependency in the light most favorable to the lower court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child is dependent. In making this determination we neither weigh the evidence nor judge the credibility of the witnesses, but instead defer to the factual findings made by the juvenile court, bearing in mind that [t]he juvenile court's primary responsibility is to consider and protect the welfare of a child whose well-being is threatened.[6]

OCGA § 15-11-2 (22) (A) defines a "[d]ependent child" as one who "[h]as been abused or neglected and is in need of the protection of the court.'"

Here, the evidence began with DFCS's investigation at the time of G. G.'s birth in November 2018. At that time, the parents undisputably lacked stable housing, income, and resources to care for G. G. The parents themselves exhibited extremely poor hygiene and did not appear to be caring for the baby in the hospital. After DFCS obtained temporary custody of G. G., a case plan was developed for the parents, requiring them to obtain stable housing and income, complete six months of clear drug screens, cooperate with psychological evaluations, and attend parenting classes. The parents completed the parenting classes but did not complete any of the other

---

[6] (Punctuation omitted.) *In the Interest of R. D.*, 346 Ga. App. 257, 259 (1) (816 SE2d 132) (2018).

goals in the plan. An initial drug screen for the parents revealed the presence of alcohol (in the afternoon) for the father, and the mother's sample was unusable due to an elevated level of creatine. The parents did not further participate in drug screening, despite being ordered to do so.

After DFCS took custody of G. G., the parents engaged in visitation with the child, but they continued to display poor hygiene, and the mother did not appear to be bonded with the child. She did not competently participate in diapering, bathing, or feeding the baby during the visits. After the mother's visits, G. G. needed bathing by the foster parents.

Approximately four months prior to the dependency hearing, the parents had moved to an apartment, and a DFCS case worker visited the residence.[7] The case worker observed that the apartment was "cluttered[, and] there was a foul odor in the home." There was a room for the child, "but it was an empty room. There was no baby bed, car seat, or anything like that."

The evidence further showed that all of these circumstances were a continuation of the mother's history of neglecting her three younger children. The

---

[7] The visit was unannounced because the parents would not cooperate with attempts to schedule regular DFCS visitation.

Virginia Department of Social Services became involved with the mother's younger children in 2017, when the mother left a three-month-old and fifteen-month-old unsupervised while she engaged in sexual activity in the parking lot of the motel where they resided. At that time, the parents tested positive for methamphetamine, and the two children tested positive for methamphetamine and cocaine. The children were poorly cared for and exhibited extremely poor hygiene. During the pendency of the Virginia case, the parents continued to abuse drugs and lacked stable housing and income. The mother became pregnant with a third child who was born in November 2017 and who tested positive for methamphetamine. The parents' parental rights to those children were ultimately terminated, and they moved to Georgia approximately two months before the mother gave birth to her fourth child, G. G., in November 2018.

In light of the mother's continued pattern of failing to provide a stable environment for and neglecting the basic needs of G. G., the record now before us shows that the juvenile court was authorized to find by clear and convincing evidence that G. G. was a dependent child originally in 2018 as well as on the date of the December 2019 hearing. The dependency finding was based on the mother's neglect or abuse of G. G. The Juvenile Code defines "neglect" to include "[t][he failure to

provide proper parental care or control, subsistence, education as required by law, or other care or control necessary for a child's physical, mental, or emotional health or morals."[8] To determine whether a child is without "proper parental care or control," courts consider

> [e]gregious conduct or evidence of past egregious conduct of a physically, emotionally, or sexually cruel or abusive nature by such parent toward his or her child or toward another child of such parent; [and]. . . [p]hysical, mental, or emotional neglect of his or her child or evidence of past physical, mental, or emotional neglect by the parent of such child or another child of such parent.[9]

> Consideration of past misconduct is appropriate because the juvenile court is not required to reunite a child with a parent in order to obtain current evidence of deprivation or neglect. Nevertheless, the record must contain evidence of present dependency, not merely past or potential future dependency. Moreover, a finding of parental unfitness is essential to support an adjudication of present dependency. "Unfitness" in this respect refers to intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child.[10]

---

[8] OCGA § 15-11-2 (48) (A).

[9] OCGA § 15-11-311 (a) (4), (5).

[10] (Punctuation omitted.) *In the Interest of A. B.*, 350 Ga. App. 575, 578 (2) (829 SE2d 842) (2019).

From the day of G. G.'s birth, the mother manifested her unfitness by an inability or unwillingness to care for the child in the hospital. The mother's own hygiene was poor, and she did not adequately clean or feed the newborn. After DFCS took custody of G. G., the mother failed to complete any aspect of her reunification plan (such as obtaining stable housing, employment, and income, and providing clear drug screens) except completing parenting classes. During visitation, the mother did not adequately care for G. G., nor did she appear to be fully bonded with the child. The housing she occupied leading up to the dependency hearing was unclean, smelled foul, and lacked any of the necessities for an infant. There was evidence that the mother was uncooperative with drug screens and did not willingly allow DFCS to visit her residence, despite these reunification plan requirements. All of this evidence was consistent with the mother's recent past unfitness with respect to her three younger children, including leaving them without proper supervision and engaging in behavior resulting in their own positive drug screens, that led to termination of her parental rights as to those children in the months leading up to G. G.'s birth.

In sum, the record was sufficient to support the juvenile "court's determination that at the time of the hearing, and by clear and convincing evidence, the mother was unfit in that she committed intentional or unintentional misconduct resulting in the

9

abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child."[11] With respect to the adequacy of the juvenile court's order itself, the order clearly enumerated factual findings summarized above, which findings were supported by clear and convincing evidence in the record. Accordingly, we discern no basis for reversing the April 8, 2020 dependency order challenged by the mother in this appeal.

*Judgment affirmed. Reese and Brown, JJ., concur.*

---

[11] (Punctuation omitted.) Id. See *In the Interest of E. G. M.*, 341 Ga. App. 33, 50 (2) (b) (798 SE2d 639) (2017) (affirming a finding of continued dependency based on the parents' unresolved substance abuse issues), reversed on other grounds by *In the Interest of I. L. M.*, 304 Ga. 114 (816 SE2d 620) (2018) (consolidated case); *In the Interest of M. M.*, 315 Ga. App. 673, 676-678 (2) (727 SE2d 279) (2012) (explaining that if established by clear and convincing evidence, a "[l]ack of stable housing and lack of support due to a parent's unstable or irregular employment are appropriate factors in determining [dependency].") (citation and punctuation omitted).